# INTERNATIONAL PAPER COMPANY *v.* COM- MONWEALTH OF MASSACHUSETTS.

## ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 733.  Argued October 19, 1917.—Decided March 4, 1918.

The principles laid down in *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, and other cases, limiting the power of a State in respect of license fees or excise taxes imposed on foreign (sister state) corporations doing interstate as well as local business, are restated and reaffirmed.

A license fee or excise of a given per cent. of the par value of the entire authorized capital stock of a foreign corporation doing both local and interstate business and owning property in several States, tested, as it must be, by its essential and practical operation rather than by its form or local characterization, is a tax on the entire business and property of the corporation, and is unconstitutional and void, both as an illegal burdening of interstate commerce, and as a deprivation of property without due process of law.

The immunity of interstate commerce from state taxation is universal and covers every class of such commerce, including that conducted by merchants and trading companies no less than what is done by common carriers.

As respects the power of a State to tax property beyond its jurisdiction belonging to a foreign corporation, it is of no moment whether the corporation be a carrier or a trading company, for a State is wholly without power to impose such a tax.

Massachusetts Stats., 1914, c. 724, § 1, as construed by the Supreme Judicial Court, removed the maximum limit fixed by Stats., 1909, c. 490, Pt. III, § 56, so that the two conjointly exact a single tax based on the par value of the entire authorized capital stock of the foreign corporation, of 1/50 of 1% of the first $10,000,000, and, 1/100 of 1% of the excess.  *Held*, that, so changed, the law in its essential and practical operation is like those held invalid in *Western Union Telegraph Co.* v. *Kansas*, *supra*, and other cases cited, including *Looney* v. *Crane Co.*, 245 U. S. 178; and that a tax exacted under it for the privilege of doing local business, from a foreign corporation largely engaged in interstate commerce, and

whose property and business were largely in other States, was void.
*Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, distinguished.
228 Massachusetts, 101, reversed.

THE case is stated in the opinion.

*Mr. Charles A. Snow*, with whom *Mr. Frank T. Benner* and *Mr. William P. Everts* were on the brief, for plaintiff in error. See *post*, 149.

*Mr. William Harold Hitchcock*, Assistant Attorney General of the State of Massachusetts, with whom *Mr. Henry C. Attwill*, Attorney General of the State of Massachusetts, was on the brief, for defendant in error.

As plaintiff in error could not complain of the original tax, the only question raised by this record is whether Stats., 1914, c. 724, by increasing the amount by 1/100 of 1% of its authorized capital exceeding ten million dollars, namely, by the amount of $3,500, turns the excise, so far as this corporation is concerned, into an unconstitutional exaction, either in whole or in part.

In *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, this court adopted the conclusion that the original tax imposed by the Statute of 1909 was not a property tax but an excise, in the determination of which the authorized capital of the corporation is used only as a measure (pp. 84, 87). This measure the court stated to be "in itself lawful, without the necessary effect of burdening interstate commerce." Obviously, the additional tax imposed by the new statute is of precisely the same character. As the plaintiff in error is conducting a purely local business separable from its interstate commerce, and as it is thus within the power of Massachusetts to impose an excise upon it, for the privilege of engaging in that business, to be measured by its authorized capital stock, it necessarily follows that the whole authorized capital may be so used in all cases without reference to the amount. We must assume that we are dealing with a

subject of taxation entirely within the power of the State; otherwise, the corporation would not be subject to the original limited excise tax.

The Statute of 1914 thus has to do merely with the amount of the tax in cases which admittedly come within the power of the State to tax to some extent. That in such cases a tax may be levied at a given percentage of the entire authorized capital stock of a corporation, without reference to where its property is located or whether such property is within the jurisdiction of the State or not, is well established by the decisions of this court. *Pembina Consolidated Silver Mining Co.* v. *Pennsylvania,* 125 U. S. 181, 186; *Horn Silver Mining Co.* v. *New York,* 143 U. S. 305, 314, 315, 317; *Kansas City &c. Ry. Co.* v. *Kansas,* 240 U. S. 227; *Kansas City &c. R. R. Co.* v. *Stiles,* 242 U. S. 111; *Pick & Co.* v. *Jordan,* 169 California, 1, 244 U. S. 647; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; *Society for Savings* v. *Coite,* 6 Wall. 594; *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107; *United States Express Co.* v. *Minnesota,* 223 U. S. 335; *Pullman Co.* v. *Adams,* 189 U. S. 420; *Allen* v. *Pullman Co.,* 191 U. S. 171.

The foregoing decisions and many others cited therein plainly demonstrate that, if a State may impose a tax upon a given subject of taxation, it may increase that tax to the fullest extent permitted by its constitution.

It was early recognized that "the power to tax involves the power to destroy." *McCulloch* v. *Maryland,* 4 Wheat. 316, 431. And this necessary consequence of the existence of the right to tax is the real basis of many of the limitations which this court has held were placed by the Federal Constitution on the powers of the States. It was on this ground that it was held that a State cannot to any extent, no matter how slight, impose a tax upon any activities of the Federal Government. This also was essentially the doctrine on which the power of the States to tax interstate commerce was denied.

It necessarily follows from this doctrine that, if a subject-matter of state taxation plainly exists; the State unless forbidden by its own constitution may tax that subject-matter to the point of destruction. If a corporation engaged in interstate commerce is also conducting a local business "real and substantial and not so connected with interstate commerce as to render a tax upon it a burden upon interstate business" (*Baltic Mining Co.* v. *Massachusetts*, at p. 86), a State has power to tax this business to the fullest extent, even to the extent of compelling the corporation to give it up. *Pullman Co.* v. *Adams*, 189 U. S. 420, 422. This was plainly recognized by this court in *Allen* v. *Pullman Co.*, 191 U. S. 170, 181.

The additional tax imposed upon the plaintiff in error by the Statute of 1914 does not upon the particular facts of this case have the necessary effect of burdening its interstate commerce.

The tax does not deny to the plaintiff in error the equal protection of the laws. It has acquired no permanent property within the Stat ; there has been no discrimination against it in the increase of its tax.

*Mr. Malcolm Donald*, by leave of court, filed a brief as *amicus curiæ*, attacking the .w of 1914.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit by a New York corporation to recover the amount of an excise tax assessed against it in Massachusetts for the year 1915 and paid under protest, the right of recovery being predicated on the asserted invalidity of the tax under the commerce clause of the Constitution and the due process clause of the Fourteenth Amendment. The tax is also assailed on other grounds which will be passed without particular notice. The case is set forth in an agreed statement, in the light of which

the state court has sustained the tax. 228 Massachusetts, 101. The Massachusetts statutes under which the tax was imposed are as follows:

St. 1909, c. 490, Part III, § 56. "Every foreign corporation shall, in each year, at the time of filing its annual certificate of condition, pay to the treasurer and receiver general, for the use of the commonwealth, an excise tax to be assessed by the tax commissioner of one fiftieth of one per cent of the par value of its authorized capital stock as stated in its annual certificate of condition; but the amount of such excise tax shall not in any one year exceed the sum of two thousand dollars."

St. 1914, c. 724, § 1. "Every foreign corporation subject to the tax imposed by section fifty-six of Part III of chapter four hundred and ninety of the acts of the year nineteen hundred and nine shall in each year, at the time of filing its annual certificate of condition, pay to the treasurer and receiver general for the use of the commonwealth, in addition to the tax imposed by said section fifty-six, an excise tax to be assessed by the tax commissioner of one one hundredth of one per cent of the par value of its authorized capital stock in excess of ten million dollars as stated in its annual certificate of condition."

The facts shortly stated are these: The company, as before indicated, is a New York corporation. Its authorized capital stock, on which the tax was computed, is $45,000,000. Its total assets are not less than $39,000,000 or $40,000,000, of which not more than 1¾ per cent. are located or invested in Massachusetts. Its authorized and actual business is manufacturing and selling paper, in which connection it operates 23 paper mills,—1 in Massachusetts and 22 in other States. The output of its mills is sold by it in both interstate and intrastate commerce, principally the former. In Massachusetts it maintains a selling office where two salesmen, with a bookkeeping and clerical force, negotiate sales of a part of the

output to consumers in the New England States, subject to
the approval of the home office in New York. About 86
per cent. of the sales negotiated through this selling office
are in interstate commerce and the remainder are local
to Massachusetts. The sales are made largely through
long-term contracts with proprietors of newspapers
whereby the company engages to supply their needs from
its mills and from the output in transit at the time. No
stock of goods is kept on hand in Massachusetts from
which current sales are made. The executive and finan-
cial offices of the company are in New York, and none of
its corporate or business activities are carried on in Mas-
sachusetts save as is here indicated. It pays local property
taxes in Massachusetts on its real and personal property
located there. In 1915 the assessed value of such prop-
erty was $472,000 and the tax paid thereon was $8,118.
The tax in question was in addition to the property tax
and amounted to $5,500. It was imposed, so the state
court holds, as an annual excise for the privilege of doing
a local business within the State.

While the legislation under which the tax was assessed
and collected was enacted in part in 1909 and in part in
1914, its operation and validity must be determined here
by considering it as a whole, for the opinion of the state
court not only holds that the "maximum limitation" put
on the tax by the part first enacted "is removed" by the
other, but treats the two parts as exacting a single tax
based on the par value of "the entire authorized capital"
and computed as to ten million dollars thereof at the rate
of one fiftieth of one per cent. and as to the excess at the
rate of one one hundredth of one per cent.

Cases involving the validity of state legislation of this
character often have been before this court. The stat-
utes considered have differed greatly, as have the circum-
stances in which they were applied, and the questions
presented have varied accordingly. In disposing of these

questions there has been at times some diversity of opinion among the members of the court and some of the decisions have not been in full accord with others. But the general principles which govern have come to be so well established as no longer to be open to controversy.

The subject was extensively considered in *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1. A statute of Kansas was there in question. As construed by the state court, it required a foreign corporation doing an interstate and local business in that and other States to pay a license fee or excise of a given per. cent. of its authorized capital for the privilege of conducting a local business in that State. After reviewing the earlier decisions this court pronounced the statute invalid as being repugnant to the commerce clause of the Constitution and the due process clause of the Fourteenth Amendment. In that and two other cases (*Pullman Company* v. *Kansas*, 216 U. S. 56, and *Ludwig* v. *Western Union Telegraph Co.*, 216 U. S. 146), which were before the court at the same time, it was held:

1. The power of a State to regulate the transaction of a local business within its borders by a foreign corporation,—meaning a corporation of a sister State,—is not unrestricted or absolute, but must be exerted in subordination to the limitations which the Constitution places on state action.

2. Under the commerce clause exclusive power to regulate interstate commerce rests in Congress, and a state statute which either directly or by its necessary operation burdens such commerce is invalid, regardless of the purpose with which it was enacted.

3. Consistently with the due process clause, a State cannot tax property belonging to a foreign corporation and neither located nor used within the confines of the State.

4. That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a State in which it has property and is doing a local business from

taxing that property and imposing a license fee or excise in respect of that business, but the State cannot require the corporation as a condition of the right to do a local business therein to submit to a tax on its interstate business or on its property outside the State.

5. A license fee or excise of a given per cent. of the entire authorized capital of a foreign corporation doing both a local and interstate business in several States, although declared by the State imposing it to be merely a charge for the privilege of conducting a local business therein, is essentially and for every practical purpose a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other States; and this because the capital stock of the corporation represents all its business of every class and all its property wherever located.

6. When tested, as it must be, by its substance—its essential and practical operation—rather than its form or local characterization, such a license fee or excise is unconstitutional and void as illegally burdening interstate commerce and also as wanting in due process because laying a tax on property beyond the jurisdiction of the State.

True, those were cases where the business, interstate and local, in which the foreign corporation was engaged was that of a common carrier. But the immunity of interstate commerce from state taxation is not confined to what is done by the carriers in such commerce. On the contrary, it is universal and covers every class of interstate commerce, including that conducted by merchants and trading companies. And as respects the power of a State to tax property beyond its jurisdiction belonging to a foreign corporation, it is of no moment whether the corporation be a carrier or a trading company, for a State is wholly without power to impose such a tax.

Our last decision on the subject was given during the

present term in *Looney* v. *Crane Company*, 245 U. S. 178.
The case was orally argued a second time at our request
and was much considered. It involved the validity of a
Texas statute which, as construed by the state court of
last resort, required a foreign corporation as a condition
to engaging in local business in that State to pay a per-
mit tax based on its entire authorized capital and a fran-
chise tax based on its outstanding capital plus its surplus
and undivided profits. The foreign corporation complain-
ing of these taxes was a manufacturing and trading com-
pany extensively engaged in interstate and local com-
merce, principally the former, in several States, including
Texas. It maintained an agency in that State and had a
large supply depot at one point therein and a ware-
house at another. Of its gross sales and receipts for the
year preceding the suit not more than $2\frac{1}{2}$ per cent.—
$1,019,750—had any relation to Texas and of this ap-
proximately one-half was interstate in character. The
assessed value of its property in the State was $301,179,
upon which it paid the usual *ad valorem* tax.

Applying what was held in *Western Union Telegraph
Co.* v. *Kansas, supra,* and the two other cases before cited,
this court unanimously pronounced the Texas statute in-
valid as placing "direct burdens on interstate commerce"
and taxing "property and rights which were wholly be-
yond the confines of the State and not subject to its ju-
risdiction." Then turning to *Baltic Mining Co.* v. *Mas-
sachusetts*, 231 U. S. 68; *St. Louis Southwestern Ry. Co.* v.
*Arkansas*, 235 U. S. 350; *Kansas City, Fort Scott & Mem-
phis Ry. Co.* v. *Kansas*, 240 U. S. 227, and *Kansas City,
Memphis & Birmingham R. R. Co.* v. *Stiles*, 242 U. S. 111,
which were relied on as practically overruling *Western
Union Telegraph Co.* v. *Kansas* and kindred cases, the
court pointed out that the former contained express state-
ments that they were not intended to limit the authority
of the latter, and further said of the former, p. 189:

"In the first place it is apparent in each of the cases that as the statutes under consideration were found not to be on their face inherently repugnant either to the commerce or due process clause of the Constitution, it came to be considered whether by their necessary operation and effect they were repugnant to the Constitution in the particulars stated, and this inquiry it was expressly pointed out was to be governed by the rule long ago announced in *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 698, that 'The substance and not the shadow determines the validity of the exercise of the power.' In the second place, in making the inquiry stated in all of the cases, the compatibility of the statutes with the Constitution which was found to exist resulted from particular provisions contained in each of them which so qualified and restricted their operation and necessarily so limited their effect as to lead to such result. These conditions related to the subject-matter upon which the tax was levied, or to the amount of taxes in other respects paid by the corporation, or limitations on the amount of the tax authorized, when a much larger amount would have been due upon the basis upon which the tax was apparently levied. It is thus manifest on the face of all of the cases that they in no way sustained the assumption that because a violation of the Constitution was not a large one it would be sanctioned, or that a mere opinion as to the degree of wrong which would arise if the Constitution were violated was treated as affording a measure of the duty of enforcing the Constitution.

"It follows, therefore, that the cases which the argument relies upon do not in any manner qualify the general principles expounded in the previous cases upon which we have rested our conclusion, since the later cases rested upon particular provisions in each particular case which it was held caused the general and recognized rule not to be applicable."

That case and those which it followed and reaffirmed are fully decisive of this. The statutes then and now in question differ only in immaterial details, and the circumstances of their application or attempted application are essentially the same. In principle the cases are not distinguishable.

In holding otherwise the state court failed to observe the restricted and limited grounds of our rulings in *Baltic Mining Co.* v. *Massachusetts* and the other cases dealt with and distinguished in the excerpt just quoted from our opinion in *Looney* v. *Crane Company.* True, the tax sustained in *Baltic Mining Co.* v. *Massachusetts* was imposed under the first of the statutes now in question, the one of 1909; but at that time the statute placed a maximum limit on the amount of the tax which, as shown in that and other cases, was a material factor in the decision. This limitation, as the state court holds, was "removed" by the statute of 1914, which also made a partial reduction in the tax rate. Since then the tax has been assessed on the par value of "the entire authorized capital" at one fiftieth of one per cent. up to $10,000,000 and at one one hundredth of one per cent. for the excess. Accepting the state court's view of the change wrought by the later statute, it is apparent that since 1914 the Massachusetts law has been in its essential and practical operation like those held invalid in 1910 in *Western Union Telegraph Co.* v. *Kansas; Pullman Co.* v. *Kansas,* and *Ludwig* v. *Western Union Telegraph Co.,* and like that held invalid at the present term in *Looney* v. *Crane Company.*

What has been said sufficiently shows that the tax in question should have been declared unconstitutional and void as placing a prohibited burden on interstate commerce and laid on property of a foreign corporation located and used beyond the jurisdiction of the State.

*Judgment reversed.*