THE PEOPLE OF THE STATE OF NEW YORK ex rel. ALPHA PORTLAND CEMENT COMPANY, Respondent, *v.* WALTER H. KNAPP et al., Constituting the Tax Commission of the State of New York, Appellants.

**Constitutional law — tax — constitutionality of article 9a of Tax Law providing for tax on foreign corporations for privilege of doing business within this state — computation of tax.**

The relator, a corporation organized in New Jersey, manufactures and sells its products here and elsewhere. A tax was assessed against it in 1918 by the tax commission of this state for the privilege of doing business. Article 9a of the Tax Law (Cons. Laws, ch. 60), as adopted in 1917 and amended in 1918, establishes a new scheme of taxation for

manufacturing and mercantile corporations (L. 1917, ch. 726; L. 1918, ch. 276; L. 1918, ch. 417.) Every foreign manufacturing or mercantile corporation is to pay an annual tax for the privilege of doing business in this state. (Tax Law, § 209.) If the entire business is not transacted within the state, the tax is to be based upon a proportion of net income to be ascertained by the commission in accordance with prescribed rules. (§ 214.) The net income allocated to this state is to bear the same ratio to the entire net income as the aggregate of certain classes of assets within this state bears to the aggregate of certain classes of assets wherever situated. No assets not included in the enumerated classes are to enter into the ratio. The scheme of allocation takes no heed of investments in bonds and like intangible assets. (§§ 208, 214.) Nor of investments in shares of other corporations, except within prescribed limits of ten per cent. The relator, engaged in both interstate and local commerce, attacks this scheme of allocation as beyond the power of the state. Included in the relator's investments and held at the home office, are bonds which yielded interest during the year covered by the assessment. The interest enters into the income on which the tax has been computed; the principal has been excluded in the allocation of the assets. Included in the relator's investments are shares of stock of foreign corporations. Dividends from shares of stock are included in the income; the shares themselves do not enter into the terms of the proportion.

*Held*, *first*, that article 9a of the Tax Law (Cons. Laws, ch. 60, amd. L. 1917, ch. 726; L. 1918, chs. 276, 417), imposing a tax upon foreign corporations for the privilege of doing business in this state, is unconstitutional in so far as it directs that, in the computation of the tax on foreign corporations therein provided for, interest arising from investments in bonds shall be included in the income on which the tax is computed but the principal thereof disregarded in the allocation of assets.

*Second*, that the amendment to subdivisions 3 and 6 of section 214 of article 9a of the Tax Law (L. 1918, ch. 417) regulating the imposition of the tax upon foreign corporations for the privilege of doing business in this state is unconstitutional in so far as it directs that in the computation of the tax on foreign corporations therein provided for, dividends arising from investments in stocks of other corporations shall be included in the income on which the tax is computed but the principal thereof disregarded in the allocation of assets.

*Third*, that the relator should be permitted to subtract from the income the item of interest on the bonds; that it should be permitted to add the value of its shares in other corporations to the value of its

4

assets without the state; and that the order of the Appellate Division, in so far as it sets aside the whole tax, should be reversed.

*People ex rel. Alpha Portland Cement Co.* v. *Knapp,* 191 App. Div. 262, modified.

(Argued June 3, 1920; decided November 23, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 19, 1920, which reversed a determination of the state tax commission assessing a franchise tax against the relator under article 9a of the Tax Law.

The facts, so far as material, are stated in the opinion.

*Charles D. Newton,* Attorney-General (*C. T. Dawes* of counsel), for appellants. The income from the bonds held by the company in New Jersey was lawfully included in computing the New York tax. A franchise tax computed on a portion of the entire net income of a corporation from all sources does not lay a direct burden on income from property in another state. (*Home Ins. Co.* v. *New York,* 134 U. S. 594; *Kansas City Railway* v. *Kansas,* 240 U. S. 227; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Peck & Co.* v. *Lowe,* 247 U. S. 165; *U. S. Glue Co.* v. *Town of Oak Creek,* 247 U. S. 321; *K. C. R. R. Co.* v. *Kansas,* 240 U. S. 227; *Maxwell* v. *Bugbee,* 250 U. S. 525; *B. M. Co.* v. *Massachusetts,* 231 U. S. 68; *K. C. & R. R. Co.* v. *Stiles,* 242 U. S. 111.) The state statute does not attempt to, nor is its result to tax property beyond the jurisdiction of the state. The exclusion of bonds and the limitation of stock holdings to ten per cent in the computation of assets apply as well to bonds and stock held in the state as to those held outside. Both provisions were made to insure equality and fairness in the taxation of both foreign and domestic corporations. (*Kansas City Railway* v. *Kansas,* 240 U. S. 223, 227; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 85; *People ex rel. S. T. C. Co.* v. *Wemple,* 133 N. Y. 323; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107.)

*Louis H. Porter* and *F. Carroll Taylor* for respondent. Article 9a of the Tax Law, as amended by the Laws of 1918, imposes a tax on property outside the jurisdiction of the state, in violation of the Fourteenth Amendment and of section 5 of the Federal Constitution, and is, therefore, void. (*Inter. Paper Co.* v. *Massachusetts*, 246 U. S. 135; *Brown* v. *Maryland*, 12 Wheat. 419; *Pollock* v. *F. L. & T. Co.*, 157 U. S. 429; 158 U. S. 601; *Looney* v. *Crane*, 245 U. S. 178; *State Tonnage Tax Cases*, 12 Wall. 204; *Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194; *Fargo* v. *Hart*, 193 U. S. 490; *Oklahoma* v. *Wells Fargo Co.*, 223 U. S. 298.) As applied to the particular facts in this case, the tax in question is void as imposing a tax upon property without the jurisdiction of the state of New York. (*Louisville Ferry Co.* v. *Kentucky*, 188 U. S. 385; *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 395; *Union Tank Line Co.* v. *Wright*, 249 U. S. 275; *Locomobile Co.* v. *Massachusetts*, 246 U. S. 146; *Inter. Paper Co.* v. *Massachusetts*, 246 U. S. 135; *Fargo* v. *Hart*, 193 U. S. 490; *Looney* v. *Crane*, 245 U. S. 178; *Oklahoma* v. *Wells Fargo Co.*, 223 U. S. 298; *Delaware, etc., R. R. Co.* v. *Pennsylvania*, 198 U. S. 341; *Pollock* v. *F. L. & T. Co.*, 157 U. S. 429; 158 U. S. 601.) ·

CARDOZO, J. The relator, a corporation organized in New Jersey, manufactures and sells its products here and elsewhere. A tax was assessed against it in 1918 by the tax commission of New York for the privilege of doing business. The validity of the statute which assumes to authorize the tax is the question to be determined.

Article 9A of the Tax Law (Consol. Laws, chap. 60), as adopted in 1917 and amended in 1918, establishes a new scheme of taxation for manufacturing and mercantile corporations, both foreign and domestic (L. 1917, ch. 726; L. 1918, ch. 276; L. 1918, ch. 417). Every domestic manufacturing or mercantile corporation is to pay an annual tax for the privilege of exercising its franchises in

this state in a corporate or organized capacity (Tax Law, sec. 209). Every foreign corporation of like nature is to pay an annual tax for the privilege of doing business in this state (sec. 209). In each case the tax is to be computed upon the basis of the net income for the year next preceding, which income is declared to be " presumably the same as the income upon which such corporation is required to pay a tax to the United States " (sec. 209). If the entire business of the corporation is transacted within the state, the tax is to be based upon the entire net income as reported to the United States Treasury department, subject to correction for fraud, evasion or error (sec. 214). If the entire business is not transacted within the state, the tax is to be based upon a proportion of net income to be ascertained by the commission in accordance with prescribed rules (sec. 214). The net income allocated to this state is to bear the same ratio to the entire net income as the aggregate of certain classes of assets within this state bears to the aggregate of certain classes of assets wherever situated. The real property and the tangible personal property here are to be compared with the like property here and elsewhere. The bills and accounts resulting from manufacturing, sales and services here are to be compared with the like bills and accounts here and elsewhere. The shares of stock in other corporations, if found to have a situs here, but not exceeding ten per cent of the value of the local realty and the local tangible personalty, are to be compared with the total shares in other corporations, but not exceeding ten per cent of all the realty and all the tangible personalty. No assets not included in the enumerated classes are to enter into the ratio. The scheme of allocation takes no heed of investments in bonds and like intangible assets (secs. 208, 214). It takes no heed of investments in shares of other corporations, except within the prescribed limit of ten per cent. A foreign corporation, investing in railroad bonds or bonds of foreign governments, must

pay a tax upon income which includes the interest on such bonds, but may not include the bonds themselves in estimating the proportion of value within the state and elsewhere. A foreign corporation which runs its business through subsidiaries, receiving the bulk of its income through dividends thus collected, must pay a tax upon income which includes the dividends on the shares, but must disregard the shares themselves (beyond the ten per cent maximum) in the allocation of its assets. I quote for greater certainty in a foot note the statutory formula.*

The relator, engaged in both interstate and local commerce, attacks this scheme of allocation as beyond the power of the state. Included in the relator's investments and held at the home office, are bonds of the value of $658,052.30, which yielded $32,407 in interest during the year covered by the assessment. The interest enters into the income on which the tax has been computed; the principal has been excluded in the allocation of the assets. Included in the relator's investments are shares of stock of the Alpha Portland Cement Company of Pennsylvania

---

* " The proportion of the entire net income of the corporation upon which the tax under this article shall be based, shall be such portion of the entire net income as the aggregate of

" 1. The average monthly value of the real property and tangible personal property within the state.

" 2. The average monthly value of bills and accounts receivable for (a) personal property sold by the corporation from merchandise manufactured by it within this state; (b) personal property sold by the corporation from merchandise owned by it and located within the state at the time of the acceptance of the order, but not manufactured by it within this state; and (c) services performed within this state, excluding bills and accounts receivable arising from sales made from a stock of merchandise or other property located at a place of business maintained by the reporting corporation without this state.

" 3. The proportion of the average value of the stocks of other corporations owned by the corporation, allocated to the state as provided by this section, but not exceeding ten per centum of the real and tangible personal property segregated to this state under this article, bears to the aggregate of

of the value of $4,500,000; shares of stock of the Anvil Stone Company of the value of $23,600; and shares of stock of the North American Portland Cement Company of the value of $10,000. The Alpha Portland Cement Company of Pennsylvania holds the title to plants located in that state. The relator, owning the entire stock, has occupied the plants, rent free, and has operated them directly. If it had operated them indirectly through the management of its subsidiary, and had taken the net income, which was nearly $400,000, in the form of dividends on the shares, this scheme of allocation, if valid, would have included the dividends as income and disregarded the shares in fixing the situs of the assets. " The constitutional validity of a law is to be tested, not by what has been done under it, but by what may, by its authority, be done " (*Stuart* v. *Palmer*, 74 N. Y. 183, 188; *Colon* v. *Lisk*, 153 N. Y. 188, 194; *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413, 424). Dividends from other shares, those of the Anvil Stone Company, are

---

" 4. The average monthly value of all the real property and personal property of the corporation, wherever located.

" 5. The average total value of bills and accounts receivable for (a) personal property sold by the corporation from merchandise manufactured by it within and without this state; (b) personal property sold by the corporation from merchandise owned by it at the time of acceptance of the order but not manufactured by it; and (c) services performed both within and without this state, based on orders received at offices maintained by the corporation, excluding bills and accounts receivable on orders filled from a stock of merchandise or other property maintained by the corporation.

" 6. The average total value of stocks of other corporations owned by the corporation, but not exceeding ten per centum of the aggregate real and tangible personal property set up in this report.

" Real property and tangible personal property shall be taken at its actual value where located. The value of share stock of another corporation owned by a corporation liable hereunder shall for purposes of allocation of assets be apportioned in and out of the state in accordance with the value of the physical property in and out of the state representing such share stock." (Section 214.)

included in the income; the shares themselves do not enter into the terms of the proportion.

1. I think the statute is invalid, in its application to the relator, in so far as it lays upon income a burden that is irrespective of the situs of the assets by which income is produced. The power of a state to attach conditions to the transaction of intrastate business by foreign corporations is not unlimited to-day, whatever under earlier decisions it may once have seemed to be. The field of law is one where new rules are in the making. Only the Supreme Court of the nation can definitively fix their content. The judgment of a state court can hardly fail, in the meantime, to be tentative and groping. We must shape our path and our progress by such light as we have. No doubt in the earlier cases there was much said, if not decided, that would seem to emancipate the state from all restrictions in conditioning the local business (*Horn Silver Mining Co., v. New York,* 143 U. S. 305; *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217; *Home Ins. Co.* v. *N. Y.,* 134 U. S. 594; *Ashley* v. *Ryan,* 153 U. S. 436). Later cases have explained and qualified these judgments, and, to the extent of conflict, overruled them (*International Paper Co.* v. *Mass.,* 246 U. S. 135; *Looney* v. *Crane Co.,* 245 U. S. 178; *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1; *Meyer, Auditor of Oklahoma* v. *Wells Fargo & Co,,* 223 U. S. 298; *Wallace* v. *Hines,* 253 U. S. 66; 40 Sup. Ct. 435; Powell, Indirect Encroachment on Federal Authority, 31 Harvard Law Review, 721, 774, 932, 942; Powell, The Changing Law of Foreign Corporations, 33 Political Science Quarterly, 569; Henderson, Foreign Corporations in American Constitutional Law, Harvard University Press, pp. 131, 134, 151, 161). The rule now is that a foreign corporation may not be required to purchase relief from ouster at the price of a surrender of constitutional immunities. The state may not say that the right to conduct the local business shall be lost if the corporation exercises the privilege of resorting to

the federal courts (*Donald* v. *Phila. & Reading Coal & Iron Co.*, 241 U. S. 329; *Harrison* v. *St. Louis, etc., Ry. Co.*, 232 U. S. 318; Henderson, Foreign Corporations in American Constitutional Law, p. 141). The state may not say that the right to conduct the local business shall be lost if the corporation will not pay a tax upon property which, by reason of its situs elsewhere, is immune from taxation here (*Int. Paper Co.* v. *Mass.; Looney* v. *Crane Co.; W. U. T. Co.* v. *Kansas; Meyer, Auditor of Oklahoma* v. *Wells Fargo & Co.; Wallace* v. *Hines, supra; N. Y. Life Ins. Co.* v. *Head*, 234 U. S. 149, 164). This is certainly the law when the business of the corporation embraces interstate as well as local commerce. We are not now required to decide whether it is not equally the law when the business is restricted to local commerce only (Henderson, *supra*). *International Paper Co.* v. *Mass.* (*supra*) puts the modern doctrine in a sentence: " That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a state in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the state cannot require the corporation as the condition of the right to do a local business therein to submit to a tax on its interstate business or on its property outside the state." (p. 141.) In determining whether the tax is in truth a tax on property, we are to consider, not its form or label, but its practical operation (*Int. Paper Co.* v. *Mass., supra; Am. Mfg. Co.* v. *St. Louis*, 250 U. S. 459). Thus, a tax, denominated a license, is in fact a tax on property if measured by the entire capital of a manufacturing corporation irrespective of the situs (*Looney* v. *Crane; Int. Paper Co.* v. *Mass., supra*). So a tax assessed against a railroad, though classified as an excise, will be invalid, like a tax on property, if values which are extraterritorial are unreasonably made the measure of values which are local (*Wallace* v. *Hines*, 253 U. S. 66; *Cf. Union Tank Line*

*Co.* v. *Wright,* 249 U. S. 275). In one case (*Wallace* v. *Hines, supra*) the test of mileage was rejected when values in sparsely settled plains were thereby put upon a par with those in populous communities. In another (*Union Tank Line Co.* v. *Wright, supra*) the value of local cars was held to be unrelated to mileage in the state and out of it. A burden, arbitrarily swollen by resort to foreign assets, is not saved by the label which identifies it as a tax upon a local privilege.

Tested by these precedents, the tax imposed upon this franchise must be held in practical operation to be a tax upon the income. Such, indeed, it would be in form as well as in substance, if the legislature had not stated (sec. 209) that the "privilege of doing business" was the consideration for the payment. Nothing but that recital stands between the statute and conceded invalidity. How the legislature itself looked upon the substance of the burden is indicated by other provisions of the same and later statutes. The tax is to be in lieu of all other taxes on personal property or capital stock (Tax Law, sec. 219-J). It is to be in lieu of all other taxes upon income (sec. 350, subd. 7). There surely was no intention that all mercantile and manufacturing corporations, foreign and domestic, should in very truth be exempt from taxes upon property so fundamental in importance as capital and the fruits of capital. The reason for the apparent exemption was that, under the form of a tax upon the franchise, the property of such corporations had already been subjected to its share of public burdens.

I think, therefore, that in substance, though not in form, in tendency, though not in name, this tax is equivalent to a tax upon relator's income. The only question then is whether the method of allocation is reasonably adapted to the apportionment of income according to the situs of its origin. The state substantially concedes that a tax on income could not stand if allocated on such a basis. *Meyer, Auditor of Oklahoma* v. *Wells Fargo & Co.* (223 U. S.

58    People ex rel. Alpha P. C. Co. *v.* Knapp.

[230 N. Y.]            Opinion, per Cardozo, J.            [Nov.,

298); *Shaffer* v. *Carter* (252 U. S. 37), and *Travis* v. *Yale & Towne Manufacturing Co.* (252 U. S. 60) are sufficient in themselves to justify the concession. In the first case the tax was measured by the entire income. The scheme of allocation limited the assessors to the comparison of the receipts of business done within the state with the receipts of business there and elsewhere. Investments in bonds and lands were disregarded in the apportionment, though the income from such investments was included in the measure. On that ground, as well as on others, the statute was held invalid. There is no distinction between that case and this (so far as the objection just stated is concerned) except in the label of the burden. Here, as there, the statute prescribes a rule of allocation which, as applied to foreign corporations holding bonds and shares in other states, involves an artificial and arbitrary augmentation of the value of the local privilege. It measures the value of the franchise, here and elsewhere, by income from all sources, and excludes some of the same sources when the value is apportioned. To take from assets elsewhere is equivalent to adding to assets here. The statute would be little different in principle if it announced the arbitrary rule that all investments in bonds and stocks should be conclusively presumed to have their situs in New York. The resulting vice in the proportion is not the consequence of adventitious circumstances, of inequalities developing unexpectedly in the practical workings of the statute, but hardly to be avoided by reasonable foresight. The exclusion of bonds and stocks is the result of an explicit mandate. The principle of allocation is not followed to its natural and obvious outcome in accordance with the situs of the assets, but is consciously checked, its normal course is thwarted, by an artificial and designed exception. Something which, in the absence of express exclusion, would be within its operation, is knowingly taken out of it. I am unable to avoid the conclusion that a method of apportionment which purposely ignores

realities, which compels an assessor to look to some of the assets only, and close his eyes to all the others, is arbitrary and unreasonable in its increase of the local burden.

It does not help the case to argue that bonds and stock certificates can be moved from state to state, and that frauds upon the tax might become common if possession in another jurisdiction were accepted as the test. That may be a very good reason why such assets and their income should be eliminated altogether from both branches of the proportion. It is no reason why, the income being included, the assets yielding the income should be excluded for the purpose of apportionment. There is no greater difficulty, moreover, in fixing the situs of shares beyond the ten per cent limit than in fixing that of shares below it. Rejected too must be the argument that the plan of apportionment is made valid by the possibility that the excluded assets will sometimes have their situs here, in which event the taxpayer may be helped by their exclusion. That is mere chance. The state does not expect that the chances will preponderate in favor of such an outcome, or it would have used some other formula. The argument, if accepted, would sustain the tax condemned in *Meyer, Auditor of Oklahoma* v. *Wells Fargo & Co.* (*supra*), and, indeed, would serve to justify the most obvious vagaries. The legislature in that view might exclude everything but real estate from the scheme of allocation, and justify the restriction upon the plea that profit would result to some one. Such hit or miss methods do not take the place of regularity and system. The taxpayer complaining of the tax is injured. It does not help the statute that another may be benefited.

2. The question remains whether what is bad may be severed from what is good, and the substance of the scheme preserved. I think the severance is possible. Two defects have been found. The remedy for each will be separately considered.

(a) To remedy the first, all that has to be done is to

permit the relator to subtract the interest on its bonds from the income of the year. I think this does not involve the revision in any prohibited sense of the legislative scheme. A particular item, erroneously included, is eliminated, and the tax measured by what is left. Such a situation comes closer to *Ratterman* v. *Western Union Telegraph Co.* (127 U. S. 411) and the cases there cited, where a tax imposed generally on the receipts of foreign and domestic commerce, was divided into its valid and invalid elements, than to *Meyer, Auditor of Oklahoma* v. *Wells Fargo & Co.* (223 U. S. 298), where the invalid was so commingled with the valid, was so large and essential a part of a single scheme, that revision was adjudged impossible (223 U. S. at p. 302). Even there it was recognized that the propriety of severance was a subject upon which the state court would speak with final authority, since in last analysis it was a question of the legislative purpose (*Cf. Berea College* v. *Kentucky*, 211 U. S. 45, 55; *Loeb* v. *Columbia Township Trustees*, 179 U. S. 472, 490; *Huntington* v. *Worthen*, 120 U. S. 97). In this state, we have gone far in subdividing statutes, and sustaining them so far as valid (*Dollar Co.* v. *Canadian C. & F. Co.*, 220 N. Y. 270, 278, and cases there cited; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416, 432; *People ex rel. Penn. Gas Co.* v. *Saxe*, 229 N. Y. 446). The tendency is, I think, a wholesome one. Severance does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment (*Loeb* v. *Columbia Township Trustees, supra*). The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots.

I think that in this instance the answer is not doubtful. The tax is one on manufacturing and mercantile corporations. The great bulk of the income of such corporations in the vast majority of cases is derived, not from interest on bonds, but from the operations of the business, *i. e.*, from manufacture and from sale (*Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194, 227; 166 U. S. 185, 225). Often bonds do not figure in the assets at all. Seldom, relatively to the total, will they be more than a minor incident. Interest on such investments might be eliminated from the income with little disarrangement of the average results. In exceptional instances, the difference might be important, but legislation looks to probabilities. A very different situation was presented in the federal income tax case (*Pollock* v. *Farmers' Loan & Trust Co.*, 158 U. S. 601). There the point was that to eliminate the items unlawfully included would mean the loss of " by far the largest part of the anticipated revenue " (158 U. S. at pp. 636, 637). Even at that, the conclusion adverse to severance provoked a strong dissent (158 U. S. at pp. 683, 698; 157 U. S. at p. 586). What was the principal in that case, is the incident in this. It would be intolerable to set aside in its entirety a comprehensive scheme of taxation, framed in the main with scrupulous fidelity to constitutional limitations, whenever it appeared that some asset, commonly of minor value, some incident of a varied aggregate, had been included without right in the subject-matter of assessment. Almost every business corporation has a bank account, and sometimes the account bears interest. Let us suppose that the statute made no attempt to impose a tax upon the income from bonds, but did, by virtue of its general language, include interest on deposits in banks. Is it possible that the courts would be powerless to deduct this minor item, and let the statute stand? Such a conclusion is unthinkable. The most that can fairly be asked by the taxpayer in such conditions is that the subject-matter erroneously brought

within the range of words of general application, shall be cut out and withdrawn. Unless the conclusion be unavoidable, " a general revenue statute should never be declared inoperative in all its parts because a particular part relating to a distinct subject may be invalid. A different rule might be disastrous to the financial operations of the government, and produce the utmost confusion in the business of the entire country " (*Field* v. *Clark*, 143 U. S. 649, 697). Here the main thing that the legislature was trying to reach was the income from a *business*. The foreign corporation is to pay the tax if it does business and not otherwise. Only the domestic corporation pays for the mere exercise of its franchise in a corporate capacity. In form, the tax is one upon the value of a privilege, and income is nothing but the measure. In substance, as we have seen, it is the same as if imposed directly upon income. If we are to view it according to its substance for the purpose of determining its validity, we must view it in the same way for the purpose of determining the propriety of separating the valid from the invalid.

Thus viewing it, I cannot doubt that the exclusion of interest on intangibles will leave the essence of the scheme intact. I find it unbelievable that a legislature willing to impose a tax with those items in, would be unwilling that the tax should stand if those items were out. Undoubtedly it wished them in if it had the legal right to keep them. To say that does not mean that rather than lose them, it would throw the project to the winds. Laws are not to be sacrificed by courts on the assumption that legislation is the play of whim and fancy. A doctrinaire emphasis on the possible rather than the probable would forbid severance at all times. No doubt it is easy, sheltering ourselves behind some implacable tenet of the separation of governmental powers, to insist upon a certainty impossible of attainment. We do small service to the state by so intransigent a pose. Our right to

destroy is bounded by the limits of necessity.  Our duty is to save unless in saving we pervert.  When all the world can see what sensible legislators in such a contingency would wish that we should do, we are not to close our eyes as judges to what we must perceive as men. This need is all the greater in fields where the law is in a stage of transition and readjustment (Henderson, *supra*). With the line so blurred and vague between the lawful and the unlawful, the most honestly conceived and carefully developed system of assessment may involve some element of value beyond the reach of the taxing power.  I will not readily impute a desire to place the revenues of the state in jeopardy by the sacrifice of the whole whenever there is failure of a part.

(b) I pass now to the shares of stock.  Much that has been said about the bonds is again applicable here.  Stock investments are more likely, it may be, to represent a substantial factor in the assets, at least when the business is conducted through subsidiaries.  None the less there must be many corporations that do not invest in shares at all, and few, where the dividends from shares are important elements of income as compared with earnings· of the business.  There are, however, special considerations, applicable to shares of stock, but inapplicable to bonds, which reinforce the argument for severance, though they suggest that the remedy in this instance is by addition to the principal rather than by subtraction from the income.

Article 9A of the Tax Law was first placed upon the statute books by Laws of 1917, chapter 726, and was amended by Laws of 1918, chapter 276, and Laws of 1918, chapter 417.  As first enacted, it provided for a comparison of the average total value of the shares of other corporations held by the taxpayer within the state with the average total value of the shares in other corporations held within and without the state, the value to be apportioned in and out of the state in accordance with the

64    People ex rel. Alpha P. C. Co. *v.* Knapp.

[230 N. Y.]             Opinion, per Cardozo, J.             [Nov.,

value of the physical properties in and out of the state representing such share stock (sec. 214, subds. 3 and 6). The amendment of 1918 (Ch. 417) added a proviso that the shares within the state must not exceed ten per cent of the real and tangible personal property within the state, and that the total shares must not exceed ten per cent of the total real and tangible personal property (sec. 214, subds. 3 and 6). Subdivision 3 was made to read: " The proportion of the average value of the stocks of other corporations owned by the corporation, allocated to the state as provided by this section, *but not exceeding ten per centum` of the real and tangible personal property segregated to this state under this article,*" the part in italics being new. Subdivision 6 was made to read: " The average total value of the stocks of other corporations owned by the corporation, *but not exceeding ten per centum of the aggregate real and tangible personal property set up in this report,*" again the part in italics being new. No change other than the addition of these provisos was made in either subdivision.

In these circumstances the history of the statute defines the lines of cleavage that severance should follow. The amendment, being invalid, is to be exscinded, and the statute in its valid form preserved. A scheme of allocation, lawful in its inception, but made unlawful thereafter by force of an illegitimate proviso, is not for that reason to be abandoned altogether. The amendment falls. The rule which there was an abortive effort to amend survives (*Huntington* v. *Worthen,* 120 U. S. 97, 102; General Construction Law, sec. 95).

I have said that the statute, in so far as it deals with shares, is valid as first enacted, when applied to this relator. I do not overlook the provision that " the value of share stock of another corporation owned by a corporation liable hereunder shall for purposes of allocation of assets be apportioned in and out of the state in accordance with the value of the physical property in and out of the state

representing such share stock" (sec. 214, sub. 6). Whether this provision might sometimes, even though the limitation of ten per cent were disregarded, work injustice to the taxpayer, we need not now determine. That problem will be solved when it arises. Something, doubtless, may be sacrificed to convenience and certainty of assessment, provided it is not too much. The proportion between values within the jurisdiction and values elsewhere can never, in any system of taxation, be maintained with mathematical precision. Departures from the norm that would be illegitimate in the allocation of the assets of the corporation subject to the tax, may conceivably be legitimate in the allocation of the assets of other corporations in which it happens to be a shareholder; else, the process of appraisement and allocation might lose itself in a wilderness of refinements and complexities, the segregation of A's assets calling for the segregation of those of B, that of D's assets for that of C's, and so on through a series. I do not dwell upon this subject now, for the relator certainly could not be wronged by such a method of allocation, whether others would be aggrieved or not. All the assets of its subsidiaries are located without the state. None, therefore, could be allocated to New York under the scheme of distribution in force under the statute as first enacted. Apportionment of the shares according to the situs of the physical property of the subsidiaries in and out of the state, would safeguard the relator against the possibility of prejudice, if the proviso were eliminated. The elimination of the proviso, therefore, must be the limit of its right.

My conclusion is that the relator should be permitted to subtract from the income the item of interest on the bonds; that it should be permitted to add the value of its shares in other corporations to the value of its assets without the state; and that the order of the Appellate Division, in so far as it sets aside the whole tax, should

5

be reversed, without costs to either party in this court, and the proceeding remitted to the commission for the revision of the assessment in accordance with these views.

ANDREWS, J. (concurring in result).    A statute is not to be treated as unconstitutional because it contains clauses that in some instances would deprive a person of his property without due process of law or would interfere with interstate commerce, if in those instances a means is provided to prevent such results.    So far as the bonds in this case are concerned, the difficulty is that the tax is figured on a proportionate valuation.    As all described property in the state is to all such property wherever situated so is taxable net income to entire net income. We agree that the bonds themselves may not be taxed. So as to their income.    But if their income is included in the entire net income which constitutes one term of this proportion, and their value not included in the other term,— " all such property wherever situated,"— the result is what we hold may not be done.    It is said that this is what the statute provides.    If that be so, then I agree that it is unconstitutional, and we are driven to the question which Judge CARDOZO discusses.    However, I do not so understand it.

For the privilege of doing business in this state a foreign corporation shall pay a tax computed on its net income, which income " is presumably the same as the income upon which such corporation is required to pay a tax to the United States."    (Tax Law, § 209.)    There are, therefore, cases where the income taxable here, and by the United States are not identical.    This is made certain by a reference to a history of the law.    Originally the tax was computed upon the net income " upon which income such corporation is required to pay a tax to the United States."    (L. 1917, ch. 726, § 209.)    The next year the section was enacted as it now stands, and

the amended act was to be construed as taking effect as
of the date of the original enactment.    (L. 1918, ch. 276.)
The amendment was in part made to meet the criticism
that the taxpayer must be given an opportunity to be
heard before a tax was imposed upon him.    Under what
conditions then do such cases arise?

Such a corporation shall annually make to the tax
commission a report showing its net income for the pre-
ceding year " as shown," said the act of 1917, " in the
last return of annual net income made by it to the United
States treasury department."    The amendment of 1918
added the words " and if the corporation shall claim that
such return is inaccurate, the amount claimed by it to be
the net income for such period."    (Tax Law, § 211.)    The
report shall also contain a statement " of the portion of
its net income which " the corporation " believes to be
the basis upon which the tax shall be imposed."    (§ 219-b.)
Thus again, an opportunity to raise any question of the
inaccuracy of the United States report, and to state its
claim as to the proper basis of the net income term of the
proportion was given the corporation.    The report is also
to contain such other facts as the tax commission may
require for the purpose of computing the tax.    (§ 211.)

The tax imposed on a foreign corporation was by the
act of 1917 to be based on a proportion of the net income —
the amount, obviously, returned to the United States —
calculated according to certain rules.    Now it is based
upon " a proportion of such ascertained net income."
The " ascertained net income " is as I understand it the
net income returned to the United States corrected if
" inaccurate " (§ 211) and also corrected by the com-
mission because of a claim made under section 219-b.
The tax imposed is three per cent " of the net income or
portion thereof taxable within the state."    (§ 215.)

If no report is made the commission shall make an
estimate of the net income of the corporation.    The
corporation must be given an opportunity to be heard in

68    People ex rel. Alpha P. C. Co. *v.* Knapp.

[230 N. Y.]        Opinion, per Andrews, J.        [Nov.,

respect thereto. An examination may be had and the commission shall fix " the tax due the state." (§§ 217, 195.) Within one year after an account for taxes has been audited and stated, the corporation may apply for its revision and if it appears that the account includes taxes which " could not have been lawfully demanded " then " the commission shall resettle the same according to law and the facts." (§ 218.) Its determination may be reviewed on certiorari. (§ 219.)

The net income returned to the United States being the basis of the state tax, the act of 1917 provided that if the amount so returned was changed or corrected by some competent authority the commission should accept such result and act accordingly. When in 1918 the return was made only presumptive evidence of the basis on which the tax was computed, the commission was called upon to make an independent investigation of the subject. (§ 219-d.) They shall return the true net income for the year but their proceedings or a reassessment are to be adjusted as provided by section 218. That is, the account reached by them shall not include taxes that may not be lawfully demanded.

In view of these various provisions I find no objection to the statute so far as the bonds are concerned. If the income derived from them is not included in the net income term of the proportion, no wrong is done the relator. The commission already has the power to make such exclusion. Its failure so to do is reviewable by the courts. The net income return to the United States is only presumptive evidence on the subject. If it contains now and then items which should not be reckoned when it comes to state taxation, the corporation has a remedy, and may in its state return claim that the United States return is inaccurate. For while " inaccurate " may refer to some mistake in computations or figures here taken in connection with section 219-b, I think it means that the return taken as a basis for state taxation contains items

that are not properly to be considered for that purpose. Assume, therefore, in stating its net income to the United States it alleges that $35,000 interest on certain bonds should not be considered; that as a basis for state taxation to include them would be inaccurate; that the portion of its net income which it believes to be the basis upon which the tax should be imposed is $50,000 less the $35,000, it is entitled to a hearing. The law was expressly amended so that it might avoid the charge of unconstitutionality in that the taxpayer was deprived of this right. The tax is to be based on the net income as ascertained by the commission. It does determine the tax and as a prerequisite necessarily determines the net income which is one term of the proportion. If a revision is asked a hearing is to be had and if taxes are included which may not lawfully be demanded relief is to be granted. It necessarily follows that all the terms of the proportion must be reviewed. If the net income contains items which should not be included, then until they are corrected the account does include taxes which cannot be lawfully demanded.

I do not discuss the question of the stock. Upon this subject the amending act of 1918 expressly provides for a computation that the majority of the court consider improper. I agree that this amendment may be eliminated.

POUND, J. (dissenting). I dissent. No reported case has gone so far as to hold, as we are about to hold in principle that a foreign corporation, if admitted to another state, may be assessed for the privilege of doing business in such state only on the earnings of the local business or on the capital employed therein. The license fee exacted by this state is in no sense a tax on the entire business or property, or the entire income of the relator. It does not come under the condemnation of such cases as *International Paper Co.* v. *Mass.* (246 U. S. 135). It places no direct burden either upon interstate commerce or on

property beyond the jurisdiction of the state. It aims to attach a value to the privilege of doing business in the state not based on the capital employed or the income produced in this state merely, but ascertained by a mode of measurement which considers the intrastate business as part of a going concern. The burden is indirect and generally speaking not unfair. (*Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *U. S. Glue Co.* v. *Town of Oak Creek*, 247 U. S. 321.)

The order appealed from should be reversed and the writ of certiorari dismissed, with costs in all courts.

CHASE and CRANE, JJ., concur with CARDOZO, J.; ANDREWS, J., concurs in result in opinion; HISCOCK, Ch. J., and COLLIN, J., dissent and vote for affirmance on ground that statute is unconstitutional; POUND, J., reads dissenting opinion.

Ordered accordingly.