In the Matter of the Application of SALISBURY AXLE COMPANY, Petitioner, for a Certiorari Order against THOMAS M. LYNCH and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, June 30, 1931.

*Prentice, Collins & Dwight* [*Ezra P. Prentice* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Wendell P. Brown, Assistant Attorney-General,* of counsel], for the respondents.

RHODES, J.   This is a certiorari proceeding to review a determination made by the State Tax Commission upon petitioner's application for a revision and resettlement of its account for the annual franchise tax under article 9-A of the Tax Law for the tax year beginning November 1, 1920, measured by the net income for the calendar year 1919.

Petitioner, a Delaware corporation organized August 5, 1919, is a subsidiary of Spicer Manufacturing Corporation, South Plainfield, N. J.   It conducts the business of manufacturing automobile axles at Jamestown, N. Y.; commenced business in this State as of July 1, 1919, and does business in no other State.

Without enumerating the various steps which have been taken resulting in the assessment made, it is sufficient to state that the Commission has assessed a tax which petitioner claims is erroneous and unlawful and which it has paid under protest.

The essential facts are undisputed and the question presented is one of law.

It appears that in July, 1919, one Charles A. Dana made a contract with the Salisbury Axle Company of New York to purchase the equipment and materials used by it for making automobile

axles. He did not purchase the materials and equipment used by it in the performance of munition contracts with the United States Government, such assets not purchased being valued at $495,026.32. For convenience the petitioner will be referred to as the Delaware corporation as distinguished from the New York corporation.

The petitioner, upon its organization, took an assignment of Dana's contract and performed it. The purchase of said assets thus acquired was made for the purpose of continuing the business then conducted by the New York corporation, but not for the purpose of continuing the war contracts for the United States Government.

The Delaware company for the year ending December 31, 1919, sustained a loss of $88,855.06. The total net income of the New York corporation for the six months of 1919 was $323,227.82. This income, with the exception of certain items hereinafter discussed, was produced by the property acquired by petitioner as the other business of the New York corporation had already been discontinued. The Commission imposed a tax upon petitioner based upon said net income of the New York corporation after deducting the losses of the Delaware company, resulting in a tax base of $234,372.77, upon which a tax at four and one-half per cent has been computed, amounting to $10,546.79.

It seems clear that the New York company, if it had not disposed of its assets to the Delaware company, would have been taxable on its said income. The question is whether or not the State has the power to require the payment of such taxes by the petitioner which has acquired the property which produced such income. The section of the Tax Law under which such tax has been imposed by petitioner is section 214-a which provides in part as follows: " Taxation of corporations acquiring assets or franchises of other corporations. If any corporation taxable under this article shall acquire either directly, indirectly or by merger or consolidation the major portion of the assets or the franchise of another corporation or of corporations exercising any franchise or franchises or doing business in this State during any year, it shall include in its own next annual return, in addition to its own entire net income, so much of the entire net income of the corporation or corporations whose assets or franchises it acquired as shall not have been used or included in measuring a franchise tax to this State, and shall be taxed upon such combined entire net incomes for the year to ensue and as hereinbefore provided. The provisions for a minimum tax shall be applied only when under such provisions a tax will result in excess of the amount which would be produced by a tax on entire net income as hereinbefore provided and then in lieu thereof.

" This section shall be construed as having been in effect as of

the date of the original enactment of article nine-a of the tax law, as added by chapter seven hundred and twenty-six of the laws of nineteen hundred and seventeen."

Unquestionably the State has power to impose a license tax for the privilege granted to petitioner to enter the State for the purpose of doing business, subject only to the requirement that the tax thus exacted is within constitutional limits as to inequalities, equal protection of the laws, and not burdensome upon interstate commerce; equally unquestioned is the right of the State to exact a franchise tax for the right to transact business therein from any corporation organized within or licensed to enter the State, subject to the same constitutional limitations. (*People ex rel. Griffith, Inc.,* v. *Loughman,* 249 N. Y. 369; *People ex rel. Terminal & Town Taxi Corp.* v. *Walsh,* 202 App. Div. 651; *Roberts & Shaefer Co.* v. *Emmerson,* 271 U. S. 50; *New York* v. *Latrobe,* 279 id. 421; *International Shoe Co.* v. *Shartel,* Id. 429; *Air-Way Corp.* v. *Day,* 266 id. 71; *Bass, etc., Ltd.,* v. *Tax Commission,* Id. 271; *People ex rel. Alpha Portland Cement Co.* v. *Knapp,* 230 N. Y. 48.) For this privilege the purchasing corporation is required to pay the franchise tax which would otherwise have been chargeable against the domestic corporation based upon the earnings produced by the assets thus acquired. Even though the lien of the tax may not have attached, the obligation is analogous to that of a purchaser of real property who takes it subject to the lien of taxes imposed thereupon. It is analogous also to the situation where the purchaser of real estate takes it subject to the lien of mortgages and incumbrances; likewise where the purchaser of personal property takes it subject to the lien of chattel mortgages and conditional sales agreements. (*Hodge* v. *Muscatine County,* 196 U. S. 276; *Lindsay & Phelps Co.* v. *Mullen,* 176 id. 126; *Illinois Central R. R. Co.* v. *Kentucky,* 218 id. 551.)

Viewed in this light it does not seem that the obligation imposed is unjust, inequitable or unconstitutional. An entirely different question would arise if the statute attempted to exact a license tax or impose a franchise tax based upon the assets or earnings of another corporation. That would have no relation to the assets employed within the State or the activities within the State of the corporation sought to be taxed and would seem to be within the constitutional prohibition referred to in *Air-Way Corp.* v. *Day* (*supra*), where it was said: " Without holding that such a charge must be measured by the value of the privilege for which it is imposed, it may be said that some relation to such value is a reasonable requirement."

Furthermore, and in so far as the petitioner acquired additional

assets to be employed within the State, the additional tax imposed may be regarded as a tax for the privilege of employing within the State the additional assets thus acquired, and to this extent may be regarded as a valid franchise tax. But the petitioner claims that the items going to make up such net income of the New York company have no relation to the employment of the assets of petitioner in the State, and, therefore, are not properly chargeable as to the measure of the value of the right of the petitioner to exercise its franchise within the State. These items are as follows:

| | |
|---|---:|
| Net profit paid to Salisbury Axle Company (of New York) during 1919 for work performed for the United States Government prior to January 1, 1919. | $65,444 21 |
| Net profit on sale of assets by Salisbury Axle Company (of New York) to Salisbury Axle Company (of Delaware). | 40,554 01 |
| Net profit on closing in 1919 reserves for inventory of Salisbury Axle Company (of New York) accumulated prior to January 1, 1919. | 135,949 84 |
| Net profit of Salisbury Axle Company (of New York) from ordinary operations during 1919. | 90,596 21 |
| Net profit by dividends on stocks of other corporations owned by Salisbury Axle Company (of New York) during 1919. | 1,664 79 |
| | $334,209 06 |
| Adjustment of unallowable deductions, etc. | 10,981 23 |
| | $323,227 83 |

As to the items " Net profit on closing in 1919 reserves for inventory of Salisbury Axle Company (of New York) accumulated prior to January 1, 1919, $135,949.84," and the item " Net profit of Salisbury Axle Company (of New York) from ordinary operations during 1919, $90,596.21," the petitioner has not shown whether these items were produced by the assets acquired by the petitioner or whether they were produced by the assets employed by the New York company in its government munitions contracts and not acquired by petitioner. The burden was upon petitioner to furnish the facts and establish any error and the amount thereof. (*People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346; *Matter of Lorimier Greenbaum Co., Inc.,* v. *Gilchrist,* 212 App. Div. 733; *People ex rel. Hazzard, Inc.,* v. *Gilchrist,* 220 id. 362.) In so far as such profits

were produced by assets acquired by petitioner, they are properly taxable herein.

The item of net profits on the sale of assets by the New York corporation to the petitioner seemingly is very directly related to the employment of those assets in the State of New York. Manifestly these items represent the difference between the cost to the New York corporation and the selling price; in other words, an increase in the value of these assets during the time they were employed by the New York corporation. Under a proper system of accounting, this increase would have been shown on the inventory of the New York corporation and would have been reflected on its balance sheet in the form of profits, thus having a direct relation to the employment of these assets within the State. The petitioner has acquired these assets, including their enhancement. It seems to me that the assets thus acquired have a very pertinent connection with the enhancement shown as profits by the New York concern.

There is merit in petitioner's claim that the separate assets employed by the New York company in government work not acquired by petitioner and which produced an income of $65,444.21, had no relevancy to the employment within the State by the petitioner of the assets so acquired, and such objection also applies to the item " Net profit by dividends on stocks of other corporations owned by Salisbury Axle Company (of New York) during 1919, $1,664.79." These items clearly have no relation to the employment by petitioner of such assets within the State, nor to the activities in any way of petitioner intrastate, and are within the constitutional condemnation stated in *Air-Way Corp.* v. *Day* (*supra*) and *People ex rel. Alpha Portland Cement Co.* v. *Knapp* (*supra*).

If the tax imposed upon the corporation were for the privilege of acquiring the assets of another corporation, a different question would be presented. But this is not the purpose of the statute. The tax imposed is wholly a franchise tax, not a tax for the privilege of purchase, sale or transfer.

It is the rule not to extend the provisions of taxing statutes beyond the clear import of the language used. (*Gould* v. *Gould,* 245 U. S. 151; *United States* v. *Field,* 255 id. 257.)

The method of computing by the Commission was, therefore, authorized and lawful except as to the inclusion of the said items of assets of the New York corporation employed in government work and net profits by dividends on stocks of other corporations owned by the New York company. (See *Matter of French Co.* v. *Lynch,* 233 App. Div. ——, decided herewith.)

The determination of the Commission should, therefore, be

annulled and the proceeding remitted to the State Tax Commission for the revision of the taxes in accordance with this opinion, with fifty dollars costs and disbursements to the petitioner.

All concur.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to State Tax Commission for revision of the taxes in accordance with the opinion.