ST. LOUIS SOUTHWESTERN RY. CO. v.
EMMERSON, Secretary of State of
Illinois.

District Court, S. D. Illinois, S. D.    May 13,
1928.

No. 800.

1. Commerce &#8680;69(1)—Franchise tax on cor-
porations based on local business transacted
does not unduly burden interstate commerce
(Corporation Act Ill. § 105; Const. art. 1, § 8,
cl. 3).

Corporation Act Ill. (Smith-Hurd Rev. St.
1927, c. 32) § 105, taxing profit corporations
on basis of proportion of issued capital stock
represented by business transacted and property
located in state, does not, when applied to in-
terstate railroad, unduly burden interstate com-
merce, in violation of commerce clause (Const.
art. 1, § 8, cl. 3).

2. Commerce &#8680;69(2)—Constitutional law &#8680;
283—Taxation &#8680;37—Statute imposing cor-
porate franchise tax held valid under com-
merce clause and due process clause as to
railroad corporation having small percentage
of capital locally invested (Corporation Act
Ill. §§ 105, 107; Const. art. 1, § 8, cl. 3; Const.
Amend. 14).

Corporation Act Ill. (Smith-Hurd Rev. St.
1927, c. 32) § 107, imposing franchise tax on
corporations having no property in state and
transacting no business there, ranging from $10
on corporations having issued capital stock of
$50,000 or less to $1,000 maximum on corpora-
tions having issued capital stock over $20,000,-
000, held not void as discriminatory or violative
of commerce clause of Const. art. 1, § 8, cl. 3,
or due process clause of Fourteenth Amend-
ment, as applied to railroad corporation having
large amount of capital of which very small
proportion was invested in state and which was
required to pay such tax under Corpora-
tion Act Ill. (Smith-Hurd Rev. St. 1927, c.
32) § 105, which imposes license tax on cor-
porations based on business transacted and
property located in state, but provides that
amount of such tax shall not be less than that
required of corporations taxable under section
107 (Smith-Hurd Rev. St. 1927, c. 32).

In Equity. Suit by the St. Louis South-
western Railway Company against L. L. Em-
merson, Secretary of State for the State of
Illinois. On defendant's motion to dismiss
bill. Motion allowed.

Whitnel & Browning, of East St. Louis,
Ill., for plaintiff.

Oscar E. Carlstrom, Atty. Gen. (B. L. Ca-
tron, Asst. Atty. Gen., of counsel), for de-
fendant.

FITZHENRY, District Judge. Plain-
tiff is a railroad corporation, organized under
the laws of Missouri, with a capital stock of
$36,249,750. Of this total capital stock,
.00746 per cent. is represented by property
owned and business done in the state of Illi-
nois, as shown by the corporation's annual
report, filed for the year 1927, as required by
law, with the secretary of state of Illinois.
In extending the corporation franchise tax
under the Illinois Corporation Act, the plain-
tiff corporation was assessed $1,000, being
the minimum tax provided by section 107 of
said act.

Plaintiff alleges the tender and willing-
ness to pay a tax of $135.21, the amount it
claims due from it under section 105 of the
act, which provides a tax upon foreign cor-
porations based upon the property owned in
Illinois and business done in Illinois. Plain-
tiff seeks to enjoin the defendant from invok-
ing any of the penalties and forfeitures for
a failure to pay the tax as assessed and
levied, upon the ground that section 107 of
the Illinois Corporation Act, as applied to
plaintiff, is illegal and violates plaintiff's
constitutional rights. Plaintiff complains of
the Illinois statute as follows: (1) It unrea-
sonably interferes with and directly burdens
interstate commerce; (2) it denies plaintiff
the equal protection of the law; and (3) de-
prives it of property without due process.
These assignments are based upon plaintiff's
conclusion that its tax should have been as-
sessed and extended under section 105 of the
Corporation Act, when, in truth and in fact,
the secretary of state extended it under sec-
tion 107, which plaintiff claims is unconsti-
tutional and void. Defendant moves to dis-
miss plaintiff's bill.

The two sections of the Illinois statute, as
amended, and in force at the time in ques-
tion and involved here, are as follows:

"Section 105. Each corporation for prof-
it, including railroads, except insurance com-
panies, heretofore or hereafter organized un-
der the laws of this state or admitted to do
business in this state, and required by this
act to make an annual report, shall pay an
annual license fee or franchise tax to the sec-
retary of state of five cents on each one hun-
dred dollars of the proportion of its issued
capital stock, or amount to be issued at once,
represented by business transacted and prop-
erly located in this state, *but in no event
shall the amount of such license fee or fran-
chise tax be less than that required by this
act of corporations having no [tangible]
property or business in this state.*

"In the event that the corporation has
stock of no par value, its shares, for the pur-
pose of fixing such fee, shall be taken and
considered at the amount of the consideration
received or to be received by such corporation
for such shares."

"Section 107. In case it appears from the annual report that the corporation has no property located in this state, and is transacting no business in this state, the following fees shall be paid annually to the secretary of state as an annual franchise tax: All such corporations having issued capital stock of $50,000 or less shall pay an annual fee of $10; corporations having issued capital stock of more than $50,000, but not exceeding $200,000 shall pay an annual fee of $15; corporations having issued capital stock of more than $200,000 but not exceeding $500,000 shall pay an annual fee of $20; corporations having issued capital stock of more than $500,000 but not exceeding $1,000,000 shall pay a fee of $50; corporations having issued capital stock of more than $1,000,000 but not exceeding $10,000,000 shall pay a fee of $200; corporations having issued capital stock of more than $10,000,000 but not exceeding $20,000,000 shall pay a fee of $500; *and all corporations having issued capital stock in excess of $20,000,000 shall pay an annual fee of $1,000.*

"In the event that the corporation has stock of no par value, its shares, for the purpose of fixing such fee, shall be taken and considered at the amount of the consideration received or to be received by such corporation for such shares."

The merits of the controversy raised by plaintiff's bill and defendant's motion to dismiss involve the construction of sections 105 and 107 of the Illinois Corporation Act, above quoted. The contention of plaintiff is that its tax should be levied under section 105, because it has property in the state and is doing business, and its tax should be based upon the proportion that the property of plaintiff in the state and its business done in the state bears to the total property and business of the corporation which is represented by the entire capital stock. The proportion is a very small one and if its tax were computed according to the provisions of section 105, disregarding, however, a very material provision of the statute, it would be deemed by plaintiff reasonable and not discriminatory; but that the secretary of state, having assessed plaintiff a tax under section 107, has taxed it out of all proportion to what it considers an appropriate tax under section 105 and entirely disregards the amount of business transacted and the property of the taxpayer in the state.

The two statutes here involved attempt to tax two entirely different things. Section 107 is clearly "a franchise tax," while section 105 provides a tax upon "the exercise of the franchise" and does not become operative until the business done and property used in the exercise of the franchise, measured by the standards provided in section 105, produce a sum equal to or greater than the amount of the mere franchise tax provided in section 107. When that point is reached in the exercise of the franchise, then section 107 ceases to be operative and section 105 controls the amount.

Section 107, it will be noted, applies to a corporation which "has no property located in this state, and is transacting no business in this state." However, section 105, taxing the exercise of the franchise, contains the provision, "but in no event shall the amount of such license fee or franchise tax be less than that required by this act of corporations having no [tangible] property or business in this state." In other words, so far as the provisions of section 105 are concerned, they do not apply and are not operative unless the franchise is exercised to the extent necessary to supersede the operation of section 107.

Where a corporation does so small an amount of business and uses so small a proportion of its property in the state as not to produce a tax under section 105 equal to or greater than the franchise tax provided in section 107, it is treated by the public policy of the state for taxing purposes as having no property in the state and doing no business in the state. To sustain plaintiff's position, it is necessary to hold that the state has no power to enact a corporation taxing statute of the character of section 107.

Plaintiff relies upon the expression of the United States Supreme Court in International Paper Co. v. Massachusetts, 246 U. S. 135, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617. That was a suit by a New York corporation to recover the amount of an excise tax assessed against it in Massachusetts for the year 1915 and paid under protest, the right to recover being predicated on the asserted invalidity of the tax under the commerce clause of the Constitution (article 1, § 8, cl. 3) and the due process clause of the Fourteenth Amendment. In that case, the Massachusetts statute required the taxing commissioner to levy an excise tax upon the coming in of the annual report of a foreign corporation of one-fiftieth of 1 per cent. of the par value of its authorized capital stock, not to exceed $2,000. Another statute, referring to the one just above mentioned (section 56), provided (St. 1914, c. 724, § 1) for the collection of another tax at the time of the filing of its annual certificate of condi-

tion, from the same corporation, an excise tax of one-hundredth of 1 per cent. of the par value of its authorized capital stock in excess of $10,000,000. The plaintiff was the owner of 23 paper mills, one in Massachusetts and 22 in other states. The entire property, 23 paper mills, business, good will, etc., of the corporation, was represented by the entire authorized capital stock, whether in the state or out of the state. In other words, the statutes of Massachusetts involved in that case made a plain tax levy upon the entire property of the foreign corporation.

After reviewing all of the authorities, the Supreme Court in the last paragraph of the opinion, gives its final conclusion in these words: "What has been said sufficiently shows that the tax in question should have been declared unconstitutional and void *as placing a prohibited burden on interstate commerce and laid on property of a foreign corporation located and used beyond the jurisdiction of the state.*"

The Massachusetts statutes were plain excise statutes, levied upon all of the authorized capital stock of the corporation, and clearly were unconstitutional for that reason. In discussing what the court had previously said in Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355, the court said: "This court unanimously pronounced the Texas statute invalid as placing 'direct burdens on interstate commerce' and taxing 'property and rights which were wholly beyond the confines of the state and not subject to its jurisdiction.' "

Do the Illinois statutes here involved come within the rules discussed in the International Paper Co., case, supra; that is, do they lay an unlawful burden on interstate commerce, or attempt to tax property outside of the jurisdiction of the state, or both?

[1] The rule is established by other decisions of the court that a graduated franchise tax, which does not vary in direct proportion to the authorized or issued capital stock of a corporation, and which is limited by a reasonable maximum amount, does not violate the commerce clause of the federal Constitution, or the due process or equal protection clause of the Fourteenth Amendment. Section 105 certainly cannot be held to be an attempt to unduly burden interstate commerce, because the tax provided in that section is limited to the business done and property used in the state and is reasonable.

[2] Plaintiff's serious complaint, however, is concerning section 107, whereby it claims the state of Illinois discriminates against it and charges it a greater franchise tax proportionately than it does other foreign corporations

securing equal privileges from the state; that is, the total property owned and business done by plaintiff in Illinois during the year in question, amounted to $789,064.36; its capital stock, represented by such property and business, amounted to $270,423. In other words, it claims $270,423 of plaintiff's capital (the total amount being $36,249,750) or .00746 per cent. of its issued stock, is represented by property located and business done in Illinois. It also challenges the power of Illinois to assess a privilege tax or fee on any portion of its capital stock, other than the proportion of the capital stock represented by the business done and the property used in the state.

It must be borne in mind that, under the two sections of the Illinois statutes here involved, unless the business done and property used is of sufficient volume and quantity to produce a tax at least equal in amount to the franchise or privilege tax fixed in section 107, then it is to be treated as if no business was done and no property had been used, and the franchise tax assessed accordingly. The power of Illinois to levy a franchise, or privilege tax, or an entrance tax, as it is called in some of the statutes, is settled by General Railway Signal Co v. Virginia, 246 U. S. 500, 38 S. Ct. 360, 62 L. Ed 854. In that case, Mr. Justice McReynolds, speaking for the court, said:

"Section 38a, c. 53, Acts of Virginia 1910 (copied in margin) requires every foreign corporation with capital over $1,000,000 and not exceeding $10,000,000, when it obtains a certificate of authority to do local business, to pay a fee of $1,000. Inspection of the statute shows that prescribed fees do not vary in direct proportion to capital stock and that a maximum is fixed. In the class to which plaintiff in error belongs the amount specified is $1,000, and, under all the circumstances, we cannot say this is wholly arbitrary or unreasonable."

Section 107 of the Illinois act applies to all corporations which have no property and transact no business in the state. It seems to have been designed to cover the situation of foreign corporations making application to qualify for the purpose of receiving grants to exercise their franchises in the state of Illinois which do not exercise those franchises, but are the owners of the rights and privileges to do so to whatever extent they may desire, within the law.

It is true the situation in which plaintiff finds itself, and which gives rise to its very earnest complaint, is a pronounced and direct illustration of the peculiar situation which

may arise. Here is a railroad corporation with an immense capital stock, aggregating almost $40,000,000. It makes application to the proper officers of the state government to grant it the right to exercise its franchise in the state of Illinois. When it qualifies, it asks for permission to operate a railway franchise. The value of the franchise necessarily bears a most legitimate relation to the amount of capital stock to be used in connection with the exercise of the franchise. When the right was granted, plaintiff, by its qualification under the Illinois law, was given the right to use just as much or just as little of its capital stock in the exercise of its franchise as it saw fit. Manifestly, the Legislature could not anticipate, nor could the ministerial officers whose duty it was to execute the grant of the privilege know, the exact amount of capital stock that the foreign corporation sought to or might use under the grant. This court does not believe it was either arbitrary or unreasonable for the state to exact a minimum (and at the same time a maximum) amount which should be paid by the foreign corporation of a particular class for the privilege granted it by reason of its qualification under the laws of Illinois.

When the St. Louis Southwestern Railway Company made application through the secretary of state for permission to enter the state and exercise its franchise as a railway company with a large capital stock, and when that application was granted, the effect of the allowance of the prayer of plaintiff amounted to the granting of a franchise by the state of Illinois to plaintiff. The valuable rights which thereupon accrued to it were property of the highest character, and it is those valuable rights, which belonged to the state, and which were given to plaintiff to use, which the state sought to tax in the manner and amount prescribed in section 107.

Because the capital stock of the corporation is one of the elements used by the statute in computing the amount of the franchise tax, plaintiff concludes it is in effect a tax upon all of the physical property of plaintiff corporation, more than 99 per cent. of which is outside of the state of Illinois. If the tax levied under section 107 was a tax upon property of a foreign corporation outside the state, then the rules announced in International Paper Co. v. Massachusetts, supra, would prevail, and the statute would be unconstitutional. However, such is not the case, for section 107 is clearly designed to tax the holders of valuable grants and privileges made by the state to those corporations which voluntarily make application for them

and bring themselves within the law to the extent that the grant becomes effective.

The tax is made substantial, and it is the duty of the courts to presume that, in fixing the amount of the franchise tax, the Legislature had good and sufficient reasons for making it so. And, in devising a uniform method of ascertainment of the tax, it was entirely reasonable that the financial ability of the applicant corporation should bear a rational relation to the value of the rights granted. It is also reasonable for the Legislature to fix the amounts of the several taxes provided for in section 107 at such a sum as would have a tendency to discourage the holding of franchises of great value without them being exercised for the benefit of the public.

Plaintiff complains that it is discriminated against, because another corporation with an issued capital stock of $270,423, and having all its property and business in Illinois, would be required to pay a tax of but $135.21, yet the state of Illinois insists upon plaintiff paying the sum of $1,000 for doing the same amount of business and having the same amount of property in the state of Illinois. It similarly complains because another foreign corporation, with a capital stock of $1,000,000, and $270,423 of that capital represented in Illinois, would pay only $135.21, while plaintiff is required to pay $1,000.

The answer to this complaint is that, if plaintiff had a capital stock of $1,000,000 and did the amount of business which it has done in this state, it, too, would be required to pay only $135.21. The provisions of section 105, " * * * but in no event shall the amount of such license fee or franchise tax be less than that required by this act of corporations having no [tangible] property or business in this state," might be treated as either a minimum tax or a provision that the requirements of section 105 would not apply until after sufficient business had been transacted and property of the corporation used in the state to warrant assessing under its provisions a tax equal to or greater than the tax provided under the provisions of section 107. The effect is to regard the exercise of a franchise so lightly that it would not be considered as having been exercised at all.

Counsel for plaintiff especially urge upon the court this language used in General Railway Signal Co. v. Virginia, supra: "It seems proper, however, to add that the case is on the border line." Preceding the above sentence is the following: "Considering what we said in [citing a number of decisions of the

court] the two characteristics of the statute just referred to must be regarded as sufficient to save its validity."

The two characteristics referred to by Mr. Justice McReynolds are: (1) That the prescribed fees do not vary in direct proportion to capital stock and that a maximum is fixed. (2) In the class to which plaintiff in error belongs the amount specified is $1,000, and "under all the circumstances we cannot say this is wholly arbitrary or unreasonable."

So, in this case, we conclude that the case made out by plaintiff's bill may also be along the border line, but the taxing statutes here involved, possessing the two characteristics referred to in the General Railway Signal Co. Case, supra, must be regarded as sufficient to save their validity.

Defendant's motion to dismiss will be allowed, and an order to that effect may be prepared and submitted.