CUDAHY PACKING COMPANY *v.* HINKLE, SECRETARY OF STATE, ET AL.

No. 278. Argued January 7, 1929.—Decided February 18, 1929.

Messrs. *J. Harry Covington* and *S. W. Brethorst,* with whom *Messrs. E. B. Palmer, Thomas M. Askren,* and *Thomas Creigh* were on the brief, for appellant.

*Mr. Levi B. Donley,* Assistant Attorney General of Washington, with whom *Mr. John H. Dunbar,* Attorney General, was on the brief, for appellees.

Mr. JUSTICE McREYNOLDS delivered the opinion of the Court.

Appellant is incorporated under the laws of Maine. Its authorized capital stock is $45,000,000. Less than $30,000,000 has been issued and the total value of the corporate property does not exceed that sum. It does an extensive business in meats and foodstuffs throughout the Union and abroad. During 1916 when the capital stock was $20,000,000 the articles of incorporation were duly filed with the proper state officer and the corporation began to carry on closely associated interstate and intrastate business in Washington. Its property therein is now worth $40,000. Gross sales by the corporation for the

year ended October 31, 1926, were $231,750,000. Of these $1,313,275 were made in Washington, less than half being intrastate.

The statutory provisions here important appear in the sections of Remington's Compiled Statutes of Washington mentioned below.

Sec. 3852 authorizes foreign corporations to do business within the State as those organized under her laws upon compliance with conditions prescribed by Secs. 3853–3854.

Sec. 3853 requires every foreign corporation to file with the Secretary of State a certified copy of its charter, etc., and Sec. 3854 requires appointment of a local agent.

Sec. 3836 (as amended by Chap. 149, Extraordinary Session, 1925) directs that every local and foreign corporation required by law to file its articles with the Secretary of State shall pay graduated filing fees, not above $3,000, reckoned upon its authorized capital stock.[1]

Sec. 3837 requires every corporation, foreign or domestic, desiring to file with the Secretary of State articles

---

[1] Section 3836. Every corporation incorporated under the laws of this state, or of any state or territory of the United States or of any foreign state or country, required by law to file articles of incorporation in the office of the secretary of state, shall pay to the secretary of state a filing fee in proportion to its authorized capital stock as follows:

Capital not exceeding $50,000, fee $25;

Capital of more than $50,000, and less than $100,000, fee $40;

Capital of $100,000, or more, and less than $150,000, fee $75;

Capital of $150,000, or more, and less than $200,000, fee $100;

Capital of $200,000, or more, and less than $300,000, fee $150;

Capital of $300,000, or more, and less than $400,000, fee $200;

Capital of $400,000, or more, and less than $500,000, fee $250;

Capital of $500,000, or more, and less than $1,000,000, fee $500;

Capital of $1,000,000, or more, and less than $2,000,000, fee $750; and $10 additional for each $1,000,000, or major fraction thereof, of capital stock in excess of $2,000,000; Provided, however, That the total filing fee for filing such articles of incorporation shall in no case exceed the sum of $3,000.

amendatory or supplemental articles increasing its capital stock to pay the fees prescribed in the preceding section less any sum theretofore paid.[2]

Sec. 3841, (as amended by Chap. 149, Extraordinary Session, 1925) requires corporations, foreign and domestic, to pay annual license fees, not above $3,000, reckoned upon authorized capital stock.[3]

Secs. 3842, 3843, 3844, 3846, 3855, and 3861 provide heavy penalties for failure to pay prescribed filing fees and license taxes.

Filing fees because of the increased capital, and license taxes for 1927, both reckoned upon the authorized capital stock, were demanded of appellant. Penalties for failure to comply were threatened. By an original bill in the United States District Court, Western District of Washington, it set up the above-stated facts and asked an

---

[2] Section 3837. Every corporation, foreign or domestic, desiring to file in the office of the secretary of state articles amendatory or supplemental articles increasing its capital stock, or certificates of increase of capital stock, shall pay to the secretary of state the fees prescribed in the preceding section for the total amount to which the capital stock of the corporation is so increased, less the amount already paid for filing the original articles of incorporation, or original articles and amendatory or supplemental articles, or certificates of increase, and every such corporation desiring to file amendatory or supplemental articles decreasing, or certificates of decrease of capital stock, shall pay to the secretary of state a filing fee of $25. For filing of other amendatory or supplemental articles, it shall pay a fee of $10; Provided, however, That the total amount paid by any corporation for filing its original articles of incorporation and all of its articles amendatory or supplemental articles increasing its capital stock or certificates of increase of capital stock, shall in the aggregate in no case exceed the sum of $3,000, plus $10 for each separate instrument filed in addition to its original articles of incorporation.

[3] Section 3841. Every corporation incorporated under the laws of this state, and every foreign corporation, having its articles of incorporation on file in the office of the secretary of state, shall, on or before the first day of July of each and every year, pay to the secre-

appropriate injunction to prevent enforcement of the demands. A court of three judges heard the cause, denied a preliminary injunction, and dismissed the bill for want of equity.

*Looney* v. *Crane Co.,* 245 U. S. 178, 187, examined Texas statutes which required foreign corporations to pay permit and franchise taxes graduated according to authorized capital stock and declared them in conflict with the Federal Constitution because they imposed "direct burdens upon interstate commerce, and, moreover, exerted the taxing authority of the State over property and rights which were wholly beyond the confines of the State, and not subject to its jurisdiction, and therefore constituted a taking without due process." These statutes prescribed

---

tary of state, for the use of the state, the following license fees in proportion to its authorized capital stock, as follows:

Capital of $50,000, or less, fee $15;

Capital in excess of $50,000, and up to and including $100,000, fee $25;

Capital in excess of $100,000, and up to and including $500,000, fee $50;

Capital in excess of $500,000, and up to and including $1,000,000, fee $100;

Capital in excess of $1,000,000, and up to and including $2,000,000, fee $150; and $10 for each $1,000,000, or fraction thereof of capital in excess of $2,000,000: Provided, however, That the total amount of such annual license fee shall in no case exceed $3,000. Every corporation failing to pay the said annual license fee, on or before the first day of July of any year, and desiring to pay the same thereafter, and before the first day of January next following, shall pay to the secretary of state, for the use of the state, in addition to the said license fee the following further fee, as a penalty for such failure, the sum of two dollars and fifty cents: Provided, however, That building and loan and savings and loan associations paying special fees provided for in the act under which same are incorporated shall not be required to pay the regular fee provided herein: Provided, further, That the annual fee required to be paid to the Department of Public Works by any public service company shall be deducted from the annual fee provided herein, and the excess only shall be collected under this act.

no maximum tax. In other respects they were not unlike the acts here under consideration.

Unless saved by the $3,000 limitation, the Washington enactments are subject to the constitutional objections pointed out in *Looney* v. *Crane Co.*. and must be denied effect.

*Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, upheld a tax based upon authorized capital stock, but limited to $2,000, imposed by Massachusetts upon foreign corporations for the privilege of doing local and domestic business therein. Consideration was given to the fact that the corporate assets were four times the authorized capital and to the limitation. Weighing all the circumstances, the Court concluded that no direct substantial burden was imposed upon interstate commerce and that property beyond the State was not taxed.

In *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 218, we said:

" It must now be regarded as settled that a State may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the commerce clause; and the Fourteenth Amendment does not permit taxation of property beyond the State's jurisdiction. The amount demanded is unimportant when there is no legitimate basis for the tax. So far as the language of *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 87, tends to support a different view it conflicts with conclusions reached in later opinions and is now definitely disapproved."

*Baltic Mining Co.* v. *Massachusetts* had sometimes been regarded as lending support to the theory that a tax which really burdens interstate commerce and reaches property beyond the State may be sustained if relatively small. This view did not harmonize with the principles approved by *Looney* v. *Crane Co.,* and was expressly disapproved by *Alpha Portland Cement Co.* v. *Mass.*

It follows that the decree of the court below is erroneous and must be reversed.

Whether, because reckoned upon authorized and not upon actual capital stock, the challenged legislation fails to require like fees for equal privileges within the doctrine of *Air-Way Electric Appliance Corp.* v. *Day,* 266 U. S. 71, we need not now consider.

*Reversed.*

Mr. JUSTICE BRANDEIS, dissenting.

The corporation maintains in Washington a branch office and a warehouse. There, it does a large intrastate business. Nearly one-half of the aggregate sales of $1,313,-275.74 made within the State were local and were from broken packages. It is subjected to two taxes which are separate and distinct. The filing fee is payable only once and as laid was $545. The annual license fee is $580. The latter results in a charge of about one-tenth of one per cent on the intrastate business. The corporation's pay roll there is more than a hundred times as large. These small taxes are obviously not more than a fair contribution to the necessary expenses of the State government. They are the same for foreign corporations as for domestic. In my opinion both taxes are valid.

If the statute sought to impose a tax on corporations engaged wholly in interstate commerce, or if the taxes laid a direct burden upon interstate commerce, or if they were laid upon property without the State, or if they were unjustly discriminatory, the fact that they are small in amount would, of course, be immaterial. *Sprout* v. *City of South Bend,* 277 U. S. 163, 171. But these taxes are not subject to any of those infirmities. The taxes are not laid upon interstate commerce. They are not measured by the amount of interstate commerce. They do not grow, or shrink, according to the volume of interstate commerce or of the capital used in it. They are not

furtively directed against such commerce. The taxes would be precisely the same in amount if the corporation did in Washington no interstate business whatsoever. Nor are they taxes laid upon property without the State. Indeed, they are neither property taxes nor substitutes for property taxes. They are an excise, laid solely for the privilege of doing business as a corporation. An individual doing the same business would not be required to pay either these taxes or any substitute therefor.

*General Ry. Signal Co.* v. *Virginia,* 246 U. S. 500, requires, in my opinion, that the filing fee be held valid. There, a filing fee of $1,000 on an authorized capitalization of $5,000,000 was sustained as against a foreign corporation, under a statute limiting the maximum tax to $5,000. Here, the filing fee demanded was $545 on an authorized capital nearly ten times as great; and the maximum fee demandable in any case was limited to $3,000. The *General Ry. Signal Co.* case was decided by a unanimous Court and the correctness of the decision has never been questioned.

*Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147, 154–158, requires, in my opinion, that the license fee be held valid. That case held a statute imposing an annual license tax valid as applied to all the foreign corporations which, like the Cudahy Company here, did both intrastate and interstate business. That decision was made by a unanimous Court after much deliberation. It has never been disapproved. The statute there in question is identical, so far as here material, with the Washington statute, except that the Massachusetts law fixes a maximum tax of $2,000, while here it is $3,000. But the Massachusetts statute was enacted in 1909; and the tax there challenged was laid in 1913. The Washington statute was enacted in 1925; and the tax here challenged was laid in 1926. The rise in the general price level since 1913 makes the Wash-

ington maximum relatively lower than that prescribed by Massachusetts.

The *Cheney Bros. Co.* case is entirely consistent with *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203. In the latter case, the tax held void was on a foreign corporation engaged solely in interstate commerce; and it was laid under a different statute. The situation here is also wholly unlike that considered in *Air-Way Corp'n* v. *Day,* 266 U. S. 71, 79 and in *Looney* v. *Crane Co.,* 245 U. S. 178, and cases there cited. In those cases, not only did the statutes fail to fix a maximum, but the taxes actually laid were so large as compared with the local business done as to constitute a substantial obstruction of interstate commerce. The case at bar is also unlike *International Paper Co.* v. *Massachusetts,* 246 U. S. 135. There, the statute failed to fix any maximum.

A tax proportionate to the capital of a corporation is sometimes laid in lieu of the ordinary property taxes, and in such cases is treated as a property tax. But the taxes here in question are not of that nature. I am aware that it has been said by this Court that a license fee of a given per cent of the entire authorized capital of a foreign corporation doing both a local and interstate business is essentially a tax on the entire business, interstate as well as intrastate; and a tax upon property outside the State. But that was said in cases where the statute did not fix any maximum. The statement seems to me legally unsound. If it were true that every tax imposed generally upon a foreign corporation doing both interstate and intrastate business taxed its interstate business and its property outside the State, then most of such corporations would largely escape taxation. By the same process of reasoning all taxes laid by a State upon property within its borders, which is used in both intrastate and interstate commerce, would be a tax on interstate commerce. But

such taxes have been universally upheld. They are valid, because, when the burden is indirect, even a large burden upon interstate commerce does not render a tax void. See *Southern Ry. Co.* v. *Watts,* 260 U. S. 519, 530; *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290.

It would be unfortunate to hold that merely because a foreign corporation, doing a local business does also interstate business, the State may not lay upon it a reasonable, non-discriminatory excise, necessarily limited to a reasonable amount, to which all domestic corporations similarly situated are subject and which can affect interstate commerce only indirectly, if at all. To hold such a tax void seems to me to ignore the wise rule of decision declared in *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 698: " The substance and not the shadow determines the validity of the exercise of the [taxing] power."

Mr. JUSTICE HOLMES joins in this opinion.