13726

STATE v. LIGGETT & MYERS TOBACCO CO.

(172 S. E., 857)

512

514

518

524

*Messrs. John M. Daniel, Attorney General, Cordie Page* and *J. I. Humphrey, Assistant Attorneys General,* and *S. M. Wolfe,* for the State, appellant,

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* as Amicus Curiae,

*Messrs. Benet, Shand & McGowan,* for respondent,

528

December 1, 1933.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN.

It is regretted that a decision in this appeal has been delayed, but, owing to the importance of the case and an unfortunate misunderstanding which arose in the Court as to the preparation of the opinion, the delay was caused.

This action was commenced on October 29, 1931, by the State of South Carolina against Liggett & Myers Tobacco Company, and was for the purpose of collecting, from the tobacco company, the sum of $34,200.00; this being the amount claimed under the domestication statute of this State for failing to comply with the terms thereof.

The answer of the defendant alleged that the Act was unconstitutional in that it denied to defendant equal protection of the laws and amounted to a taking of the property of the defendant without due process of law as opposed to the provisions of the Constitution of the United States and of the Constitution of this State (Const. S. C., Art. 1, § 5; Const. U. S., Amend. 14).

The answer also set up, as a partial defense, an allegation that the claim of the State was for a penalty, and that the two-year statute of limitations applied against said claim.

The Act under consideration was passed March 24, 1922 (32 St. at Large, p. 1023), and related to business being done by foreign corporations in this State, prescribing the method by which they could become domesticated, and providing for a penalty of $10.00 per day for failure to carry out the provisions of the Act. Further reference to the Act will be made later in this opinion.

The parties agreed to a certain stipulation as to the facts in the case; it being admitted that the allegations of the complaint were true to the effect that the defendant was a foreign corporation doing business in this State and had made no effort to comply with the terms of the statute.

Upon the pleadings and upon these agreed facts, the matter was heard by his Honor, Circuit Judge G. B. Greene, at Anderson, S. C.; a jury trial of all issues having been waived. The decree of the Circuit Judge sustained the defense interposed by the defendant, declared the entire Act unconstitutional and dismissed the complaint. From this order an appeal was taken to this Court upon exceptions which fairly present the issue to be decided. A full statement of the facts and of the holding of the Circuit Judge will be found in the decree of the Circuit Judge which will be reported with this opinion.

It seems to be conceded that Sections 3 and 4 of the Act are unconstitutional unless they can be saved by the doctrine of in *pari materia*. This seems to be sustained by the decisions of the Supreme Court of the United States, a few of them being as follows: *International Paper Co. v. Massachusetts,* 246 U. S., 135, 38 S. Ct., 292, 62 L. Ed., 624, Ann. Cas., 1918-C, 617; *Western Union Tel. Co. v. Kansas,* 216 U. S., 1, 30 S. Ct., 190, 54 L. Ed., 355; *Postal Tel. Cable Co. v. Adams,* 155 U. S., 688, 15 S. Ct., 268, 39 L. Ed., 311; *Norfolk & W. R. Co. v. Penn.,* 136 U. S., 114, 10 S. Ct., 958, 34 L. Ed., 394; *Cudahy Packing Co. v. Hinkle,* 278 U. S., 460, 49 S. Ct., 204, 73 L. Ed., 454; and numerous other cases of similar import. There seems to be considerable variance of opinion in the Supreme Court of the United States itself as to the tax relation existing between the States and foreign corporations. The *Cudahy case,* decided in 1929, is very nearly in point to the present case, but even in that case two of the Justices dissented, one filing a very strong dissenting opinion. However, a majority of the Court held that a statute of the State of Washington which required

foreign corporations to pay filing fees and annual license fees, reckoned on authorized capital stock, was invalid as being a burden on interstate commerce and as depriving the packing company of its property without due process of law. This doctrine was followed in the more recent case of *Anglo-Chilean Nitrate Sales Corporation v. Alabama,* 288 U. S., 218, 53 S. Ct., 373, 77 L. Ed., 710.

Numerous earlier decisions of the Supreme Court of the United States are somewhat conflicting in their holdings, but, as construing the Constitution, we feel constrained to follow the decision in the *Cudahy case,* although the writer of this opinion is more impressed with the correctness of the dissenting opinion in that case than in the majority opinion. The cases above mentioned are very full in treating the question from both sides, and a synopsis of those cases is hardly necessary in this opinion.

In *pari materia* means in the same matter, and it is well recognized that, when two or more statutes relating to the same matter are ambiguous or inconsistent in their provisions, the Court may reconcile them into one harmonious whole. This is especially true in order to preserve the constitutionality of both Acts. *Gregg Dyeing Co. v. Query,* 166 S. C., 117, 164 S. E., 588. It is likewise especially true when both Acts are passed at the same legislative session, as these Acts were. *Smith v. South Carolina State Highway Commission,* 138 S. C., 374, 136 S. E., 487.

On March 1, 1922, there was approved by the Governor an Act passed by the General Assembly (32 St. at Large, p. 947), requiring certain corporations to make annual reports and to pay annual license fees and to provide methods of enforcement and rates. This Act applied to both domestic and foreign corporations. In the case of the latter a license fee was to be charged upon the value of the property of such corporation used within this State. It contemplated a license for business done, not for the privilege of engaging in business.

On March 24th of the same year (32 St. at Large, 1023) the Governor approved another Act, passed at the same session of the General Assembly, which had for its purpose the domestication of foreign corporations now or hereafter engaged in business in this State and to provide the necessary steps for business dealings. This Act contemplated fees for the privilege of doing business, not for business done. While the first Act imposed a license for business done within the State, the second imposed graduated fees upon the authorized capital of such foreign corporations.

For the doctrine of in *pari materia* to apply these two Acts must refer to the same matter. We are unable to say that a fee based upon authorized capital, whether issued or not, is equivalent to a license tax based upon property or business done within the State. Nor can we say that an Act referring to domestic and foreign corporations, requiring them to pay a license tax for business done in the State, is, as a matter of law, directly connected with a fee to be charged a foreign corporation for the privilege of entering the State for the purpose of beginning to do business. The one is for business done; the other is for preparing to do business. Being unable to see how the two Acts refer to the same matter, we are forced to the conclusion that the doctrine of in *pari materia* does not apply and that the Act cannot be sustained upon this ground.

While the Act refers to foreign corporations entering this State or already engaged in business in this State, it is reasonable to say that the prime object of the Act was applicable to foreign corporations preparing to engage in business in this State. Up to the time of engaging in business, such foreign corporation presumably had no property in the State nor was any part of its capital stock used in this State, for the reason that it had not, up to then, engaged in any business in the State. It would therefore be impossible, under these conditions, for the initial fee to be based upon the property held or business done within the State and the Act

approved March 1st could not have a direct relation to the Act approved March 24th. The Act of March 1st undoubtedly had a basis upon which the tax could be levied whereas the Act of March 24th had no such basis, as no property was presumably then in the State and no business had been transacted.

Section 390 of the Code of 1932 fixes a limitation of two years on "an action upon a statute, for a forfeiture or penalty to the State." Section 5 of the Act of 1922 provides in the title for "penalties" and the body of the Act refers to "a fine." The two words, "fine" and "penalty," are frequently used in an interchangeable manner when the real purpose is for similar designation. They were so used in the statute now under consideration, although the true meaning of the words is· very different. Ruling Case Law says that a fine is usually a sum of money exacted from a person guilty of a crime as pecuniary punishment, while a penalty is that which is demanded for the violation of a statute which may or may not be a crime. 21 R. C. L., 207. In this case the defendant is charged with the violation of a statute, the violation of which is not criminal, and the limitation of the statute, as to a penalty, is clearly applicable.

The Act of 1922 certainly refers to two distinct subjects, although only one subject is expressed in the title. The primary object of the Act was to give the State some authority over foreign corporations doing business or preparing to do business in this State without being domesticated. There are five sections of the Act which are applicable to this appeal and, in brief, they provide as follows:

1. A place and manner for service of papers.

2. Filing copies of charter, by-laws, etc., with the Secretary of State, together with names and addresses of officers and directors.

3. Collection by the Secretary of State of graduated fees upon authorized capital for filing papers.

4. Collection by the Secretary of State of graduated fees upon authorized capital for each annual statement.

5. Penalty for failure to file any of the papers or pay any of the fees.

Under the federal decisions, above referred to, it would appear that Sections 3 and 4 are unconstitutional, but there can be no such objection to Sections 1, 2, and 5 unless the word "or" in Section 5 be construed "and," as held by the Circuit Judge. It is quite apparent that the use of the word "and" in the penalty provision would connect the two grounds for the penalty into such an indivisible union as to render the entire Act void. The word "or," used in the Act, permits the imposition of the penalty if either condition should exist. The rule seems to be well recognized that the Courts would prefer to sustain the constitutionality of an Act rather than to destroy it, and to this end will strike out objectionable words and insert others, or construe a word to mean other than its ordinary meaning, if by so doing the Act may be preserved, but we know of no law which permits the Court to change the wording of a statute in order to destroy such statute. And this is the result if "or" be construed as "and" in this Act.

But it may be said that to make a complete Act from Sections 1, 2, and 5 would produce an Act without a title; the title of the Act being "An Act to Provide a Schedule of Fees for The Admission of Foreign Corporations to do Business in The State." This, we must admit, is true. If the question had been raised by the respondent and the Court below had passed upon it, it would have been properly before this Court, but such is not the case. Nor was the question raised by the respondent as an additional ground for affirmance of the decree. It is not within the power of this Court to raise questions, other than jurisdictional, for the first time and decide them *suo motu*.

The result of the views herein expressed may be summarized as follows:

(1) Sections 3 and 4 of the Act must be stricken out as opposed to the Federal Constitution.

(2) Sections 1, 2, and 5 are retained as forming a complete Act, the violation of which is the basis of the complaint.

(3) The two-year statute of limitations applies to the demand for penalty.

(4) There are now no valid filing fees or annual statement fees under this Act and will not be until the General Assembly may make the necessary corrections in the law.

As sustaining the view that Sections 3 and 4 may be stricken out and that a valid statute will remain, reference is made to the following quotation from *Gillespie v. Blackwell,* 164 S. C., 115, 161 S. E., 869, 872: "Where a part of a statute is constitutional and a part unconstitutional, the former may be sustained in proper cases while the latter falls. Such a result, however, depends upon certain conditions, namely: (1) That the constitutional part of the Act is capable of being severed from the unconstitutional part so that each part may be read and may stand by itself; (2) that the striking out of the unconstitutional part will not destroy the apparent intention of the Legislature in its enactment of the law; and (3) that it is not necessary to insert words or terms to separate the constitutional part from the unconstitutional part and to give effect to the former alone."

The judgment of this Court is that the judgment of the Circuit Court be reversed and that the plaintiff have judgment against the defendant as herein expressed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER, CARTER, and BONHAM concur.