# MILES LABORATORIES, INC. *v.*
# DEPARTMENT OF REVENUE

Thomas S. Moore, Morrison, Bailey, Dunn, Cohen & Miller, Portland, represented plaintiff.

Ira W. Jones, Senior Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered May 29, 1975.

CARLISLE B. ROBERTS, Judge.

The plaintiff, an Indiana corporation, appealed from the defendant's Order No. I-73-41, dated July 26,

1973, requiring additional taxes to be paid on account of income tax returns filed under ORS chapter 317 for its tax years 1966, 1967 and 1968. The corporation sells its products (tangible personal property, consisting of ethical and proprietary drugs and clinical supplies) in a number of states, including Oregon and Washington. The plaintiff operates through several divisions, each of which is autonomous, with its own marketing management and responsibility, and selling and warehousing functions. One such division, the Consumer Products Division (which deals in proprietary medicines), maintained a warehouse in Oregon during the years in question, making deliveries in interstate commerce to purchasers in the State of Washington from the Oregon stock.

In this case there is no question that plaintiff is subject to Oregon tax. The location of its warehouse and a stock of goods in Oregon places Miles Laboratories within the "doing business" provisions of ORS chapter 317 (the Corporation Excise Tax Law of 1929). Without such physical presence, it would come under ORS chapter 318 (the Corporation Income Tax Act of 1955) because of its sales to purchasers in Oregon.[1]

As a foreign corporation engaged in business in the State of Oregon, plaintiff is subject to allocation and apportionment of its net income (ORS 314.615). The apportionment formula is designed so that Oregon will tax only that portion of plaintiff's total income which is ascribable to this state as provided by the Uniform Division of Income for Tax Purposes Act, ORS 314.605 to 314.670. The determination of the business income to be apportioned to Oregon is based upon a three-factor formula under which the income of the

---

[1] A brief history explaining these two acts is found in *Cal-Roof Wholesale v. Tax Com.*, 242 Or 435, 410 P2d 233 (1966).

plaintiff is multiplied by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three. ORS 314.650.

The defendant has included in the numerator of the sales factor (as Oregon income) the sales value of items shipped from plaintiff's Oregon warehouse to Washington purchasers. The legality of this inclusion is the sole issue presented to the court.[2]

Defendant's taxation of plaintiff is based upon the following provisions of the Uniform Division of Income for Tax Purposes Act, adopted by the legislature and codified in Oregon Revised Statutes:

"314.615. Any taxpayer having income from business activity which is taxable both within and without this state, other than activity as a financial organization or public utility or the rendering of purely personal services by an individual, shall allocate and apportion his net income as provided in ORS 314.605 to 314.675. * * *"

"314.620. For purposes of allocation and apportionment of income under ORS 314.280 and 314.605 to 314.675, *a taxpayer is taxable in another state if:*

"(1) *In that state he is subject to* a net income tax, a franchise tax measured by net income, *a franchise tax for the privilege of doing business, or a corporate stock tax; or*

"(2) *That state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not.*" (Emphasis supplied.)

[2] Questions relating to shipments to other western states and the treatment of certain interest, rents and royalties, pleaded in complaint and answer, but not mentioned in the defendant's Opinion and Order No. I-73-41, were deemed by the court to be outside its jurisdiction. See ORS 305.425(3). By stipulation of the parties, these questions have been excluded herefrom.

"314.650. All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three."

"314.665. (1) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

"(2) *Sales of tangible personal property are in this state if:*

"(a) *The property is delivered or shipped to a purchaser,* other than the United States Government, *within this state* regardless of the f.o.b. point or other conditions of the sale; *or*

"(b) *The property is shipped from* an office, store, warehouse, factory, or other *place of storage in this state and* (A) the purchaser is the United States Government or (B) *the taxpayer is not taxable in the state of the purchaser."* (Emphasis supplied.)

The parties have filed a written stipulation of facts, including the following:

"I. In each of the three years in question [income tax years 1966, 1967 and 1968] the plaintiff was an Indiana corporation licensed to do business in the State of Washington.

"II. Plaintiff has been licensed to do business in the State of Washington since at least 1957 and each year thereafter. Plaintiff pays the Washington Corporation License and Franchise tax [RCW 23A.40.140] and the annual Foreign Corporation Report filing fee. Plaintiff has never been required to pay more than the minimum license and franchise tax ($30) and the filing fee is $1.

"* * * * *

"X. The State of Washington has taken the po-

sition that plaintiff is construed to be maintaining a place of business in Washington and is therefore required to obtain a Use Tax Certificate of Registration, which plaintiff has done.

"XI. Plaintiff was required to and did collect the tax from nonprofit hospitals in the State of Washington to which plaintiff sold.

"XII. Plaintiff was required to and did pay use tax on the value of all samples distributed in Washington by its agents and has during each year in question filed the appropriate reports.

"XIII. During 1966 and the first part of 1967 plaintiff owned approximately $5,000 worth of automobiles and trucks used by salesmen in the State of Washington. The remainder of 1967 and during 1968 plaintiff leased these transportation needs from Wheels, Inc., of Chicago, Illinois.

"XIV. Insofar as the Washington business license certificates are concerned the intrastate activity of the licensee is a determinant of the ultimate liability to be paid.

"XV. The taxpayer maintains CT Corporation System, 1218 Third Avenue, Seattle, as its registered agent.

"XVI. Each of the taxpayer's salesmen carry samples with them amounting to approximately $150 per man per calendar quarter. These samples remain the property of plaintiff. They are distributed as samples but also used to replace damaged merchandise ['in quantities under $10 net direct.' See Stipulation's Ex A, at 1]. The damaged merchandise for which exchanges are made is destroyed by the salesmen and not returned to the Miles office.

"XVII. Among the duties of the salesmen is the duty to put up displays in retail outlets.

"XVIII. The State of Washington takes the position that the business and occupation tax may be

imposed for activity which would not be sufficient to impose net income tax liability in conformity with the jurisdictional restrictions of PL 86-272.

"XIX. The company policy concerning samples in the possession of the sales personnel is set forth in Exhibit A attached hereto.

"XX. Plaintiff operates through several divisions, each of which is autonomous with its own marketing management and responsibility and selling and warehousing functions. During the applicable period manufacturing for several of the divisions including the Consumer Products Division, which is the only division with a warehouse in Oregon, was operated by a separate nonmarketing division. * * *

"XXI. In filing income tax returns with the State of Oregon, as well as other states, Miles used the destination test to determine taxability. Thus, even though plaintiff maintained a warehouse in Oregon for only one division, the Consumer Products Division, it allocated all sales to Oregon customers as Oregon sales.

"XXII. The present controversy is concerned only with sales of one division, the Consumer Products Division, and only those sales to other states made out of the warehouse in Portland, Oregon.

"XXIII. The following chart shows the television advertising done * * * during the years 1966 through 1968. There was no newspaper advertising in those states.

| State | 1966 ($M) | 1967 ($M) | 1968 ($M) |
|---|---|---|---|
| * * * * * * | * * * | * * * | * * * |
| Washington Network | 34.0 | 11.9 | 12.8 |
| Spot | 260.5 | 116.3 | 213.7 |

"XXIV. The following is a breakdown of the number of company salesmen who work in the states in question as well as the number who ac-

tually reside there. Generally, the salesmen make calls upon customers and doctors.

| State | Salesmen Working in state. (Make Calls) | Of These, Salesmen Residing in State |
|---|---|---|
| * * * | * * * | * * * |
| Washington | 12 | 9." |

Plaintiff's several arguments on its claim of overtaxation can each be roughly grouped in one or more of three categories:

(1) Plaintiff is exempt from Oregon taxation of its Washington sales from the Oregon warehouse by virtue of ORS 314.620(1) because it pays a Washington tax which may be described as "a franchise tax for the privilege of doing business," or "a corporate stock tax";

(2) Plaintiff is exempt from tax on Washington purchases shipped from its Oregon warehouse by virtue of ORS 314.620(2) because the State of Washington would have jurisdiction to subject the taxpayer to a net income tax if the State of Washington had enacted the necessary statute; and

(3) The inclusion in the Oregon sales factor numerator of sales to Washington purchasers filled from the Oregon warehouse is a violation of the Due Process Clause of the Fourteenth Amendment to the Federal Constitution or an undue burden on interstate commerce in violation of the Commerce Clause.

Inasmuch as the second contention disposes of the case, it will be first considered.

ORS 314.665 describes the "sales factor" used in the formula established by the Uniform Act. Generally, it can be said that sales of tangible personal property "are in this state" (Oregon) if the property is delivered or shipped to a purchaser within this state

(variously described in the treatises as the "customer location," "point of delivery" or "destination theory"). However, if the property is shipped from the foreign corporation's office, store, warehouse, factory or other place of storage in Oregon to a purchaser in another state, and the taxpayer is not taxable in the state of the purchaser (Washington, in this instance), Section 16 of the Uniform Act (ORS 314.665(2)(b)) requires such sales to be placed in the Oregon numerator as was done in the present case.

This allocation is made under the provisions for allocation and apportionment of income in the Uniform Act but an exception thereto is provided by ORS 314.620, if the taxpayer is taxed in another state or is potentially taxable in another state (in this instance, Washington), because "[t]hat state has *jurisdiction* to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not" impose such a tax. (Emphasis supplied.)

The question presented, therefore, is: If Washington had a corporation income tax act similar to Oregon's ORS chapter 318, would the activities carried on by plaintiff in the State of Washington be such as to give to that state jurisdiction to impose the net income tax upon the profits of the interstate business (as well as any intrastate business) properly ascribable to Washington under the Uniform Act's apportionment formula or other law?

 The quality and quantity of the interstate corporation's activities in Washington, as potential components of "nexus," and as protected by Public Law 86-272, must be weighed.[9] If intrastate activity

---

[9] *See Iron Fireman Co. v. Tax Com.*, 251 Or 227, 445 P2d 126 (1968); *Cal-Roof Wholesale, supra* n 1; Lohr-Schmidt, *Developing Jurisdictional Standards for State Taxation of Multistate Corporate Net Income*, 22 The Hastings LJ 1035, 1040 and 1059 (Mar 1971).

were present, there would be no question of Washington's jurisdiction to tax. If there is only interstate activity, "nexus" must be found, and some aspect of the activities creating nexus must exceed "solicitation" of business under PL 86-272.

In support of its contention, plaintiff has fully listed its activities in Washington during 1966-1968 as follows: Twelve salesmen (nine of whom are Washington residents) regularly made calls upon pharmacies, hospitals, and physicians, seeking to interest them in the plaintiff's products. During 1966 and the first part of 1967, plaintiff owned and plaintiff's salesmen used in their sales activities "approximately $5,000 worth of automobiles and trucks" in Washington. During the latter part of 1967 and during 1968, plaintiff leased these transportation needs. Each of the plaintiff's salesmen carried samples of the corporation's products amounting to approximately $150 in value per man per calendar quarter. The samples remained the property of plaintiff but were distributed by the salesmen as samples and were also used to replace damaged merchandise "in quantities under $10 net direct." (The damaged merchandise for which exchanges were made was then destroyed by the salesmen and not returned to the plaintiff's office or warehouse.) The salesman erected displays in retail outlets. The corporation engaged in television advertising in the state at substantial cost (1966: $294,500; 1967: $128,200; 1968: $226,500).

In addition to the foregoing activities plaintiff argues that its business presence in the State of Washington is enlarged by the facts that plaintiff maintains CT Corporation System, Seattle, as its registered Washington agent;[2] by its payment of use taxes on

---

[2] Jurisdiction of Washington to tax a foreign corporation's income from interstate commerce cannot be gained by the cor-

account of (a) sales to nonprofit hospitals and (b) its distribution of samples in Washington, and its registration under the use tax law;[5] and a statement (Stipulation XVIII) that the "State of Washington takes the position that the business and occupation tax may be imposed for activity which would not be sufficient to impose net income tax liability in conformity with the jurisdictional restrictions of Public Law 86-272,"[6] but the court has found each of these claims to be irrelevant.

---

poration's voluntary appointment of a statutory agent in Washington. While engaged solely in interstate commerce, Miles Laboratories is free to send salesmen into the state without interference from regulations imposed by the state. *Eli Lilly & Co. v. Sav-on-Drugs*, 366 US 276, 279, 81 S Ct 1316, 6 L Ed2d 288, 291-292 (1961) (a case distinguishable on other grounds from subject case).

[5] The duty to collect use taxes, imposed by a state upon an interstate corporation physically present in the state, does not violate the Commerce Clause. *Scripto v. Carson*, 362 US 207, 80 S Ct 619, 4 L Ed2d 660 (1960); *General Trading Co. v. State Tax Commission*, 322 US 335, 64 S Ct 1028, 88 L Ed 1309 (1944); *Henneford v. Silas Mason Co.*, 300 US 577, 57 S Ct 524, 81 L Ed 814 (1937). (This rule is not applicable to strictly mail-order sales from out of state. *Nat. Bellas Hess v. Dept. of Revenue*, 386 US 753, 87 S Ct 1389, 18 L Ed2d 505 (1967).)

[6] The court finds the parties' Stipulation XVIII obscure and vague. It concludes that, in the years in question at least, plaintiff paid no tax on account of RCW 82.04.220, Washington's Business and Occupation Tax, a gross receipts tax "for the act or privilege of engaging in business activities."

Plaintiff's assertion that it could have been taxed under RCW 82.04.220 during the years in question under *Pressed Steel Co. v. Dept. of Rev.*, 10 Wash App 45, 516 P2d 1043 (1973), *aff'd* 419 US 560, 95 S Ct 706, 42 L Ed2d 719 (1975), is not borne out by the facts presented therein. The continuous ongoing association of the plaintiff in that case with its in-state purchaser, involving substantial post-sale activities, including regular three-day visits to the purchaser by a group of engineers who worked with the purchaser on the products' engineering problems presents a much closer and more permanent association than is found in the present case.

■ The court finds that all of the relevant acts were in furtherance of interstate commerce.[7] This fact does not preclude the imposition of a Washington tax based upon a statute similar to Oregon's ORS chapter 318 as long as the requirements of state allocation and apportionment are followed (unless PL 86-272 prohibits it). *Northwestern States Portland Cement Co. v. Minn.*, 358 US 450, 79 S Ct 357, 3 L Ed2d 421, 4 CCH STC ¶ 200-002, 67 ALR2d 1292 (1959);[8] *Smith Kline & French v. Tax Com.*, 241 Or 50, 403 P2d 375 (1965). The *Northwestern* decision gave rise to Public Law 86-272, 15 USC § 381 (1959). This "stopgap" statute, the first and only measure enacted by Congress regulating interstate commerce, reads in pertinent part:

"(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year * * * a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if

[7] For protected activities as part of interstate commerce, within the facts of the present case, *see Miller Bros. Co. v. Maryland*, 347 US 340, 74 S Ct 535, 98 L Ed 744 (1954) (automobiles, advertising); *Spector Motor Service v. O'Connor*, 340 US 602, 71 S Ct 508, 95 L Ed 573 (1951) (use of motor trucks for local activity); *Smith Kline & French v. Tax Com.*, 241 Or 50, 403 P2d 375 (1965) (use of salesmen in state; use of sample kits; setting up advertising displays). The replacement of damaged goods is implicit in the interstate transaction and must remain a part thereof; it is not an intrastate activity per se, in the opinion of the court.

[8] *See* Strecker, *"Local Incidents" of Interstate Business*, 18 Ohio St LJ 69 (1957), for the development of the law prior to the case of *Northwestern States Portland Cement Co. v. Minn.*, 358 US 450, 79 S Ct 357, 3 L Ed2d 421 (1959).

approved, are filled by shipment or delivery from a point outside the State; and

"(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

"* * * * * *

"(c) For purposes of subsection (a) of this Section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property."

Public Law 86-272 is a narrow statute, relating to "minimum activities," to be strictly construed. *Iron Fireman Co. v. Tax Com.*, 251 Or 227, 230, 445 P2d 126 (1968); *Herff Jones Co. v. Tax Com.*, 247 Or 404 410, 430 P2d 998 (1967). A further examination of plaintiff's activities must therefore be made to see if they all come within the prohibited area of "solicitation of orders" as contemplated by that statute.[⊚] Where greater activity than solicitation of orders is found, PL 86-272 becomes inapplicable. *Iron Fireman Co., supra.*

---

[⊚] "Solicit" and "solicitation" have been construed in *Phillips v. City of Bend,* 192 Or 143, 234 P2d 572 (1951), and *City of Portland v. Stevens,* 180 Or 514, 524, 178 P2d 175 (1947). In the present case, common meanings are further narrowed by the limitations enacted in PL 86-272.

■ As is stated in *Olympia Brewing Co. v. Dept. of Rev.*, 5 OTR 99 (1972), the meaning of "solicitation" for purposes of PL 86-272 should be limited to those generally accepted or customary acts in the industry which lead to the placing of orders, not those which follow as a logical or necessary result of the transaction; e.g., collections, servicing complaints, technical assistance and training of purchasers. *See Herff Jones Co., supra.* All of the plaintiff's activities in Washington are found to come within the "solicitation" provision except for the salesmen's replacement of damaged merchandise.

■ "Solicitation" has ended when the purchaser has authorized the plaintiff's salesman to submit a proposed contract of sale to plaintiff's Indiana headquarters for approval. "Presale activities are distinguishable from similar activities that constitute services after the sale." *Olympia Brewing Co., supra,* at 110.

■ In replacing unsatisfactory goods which have been delivered to and received by the purchaser, the plaintiff's salesman is making reparation for a failure implicitly required by the interstate contract, under specific or implied warranties. An item obtained by interstate delivery has been examined and rejected by the purchaser, and subsequently replaced from the salesman's locally situated sample stock. Such samples have been so closely related to solicitation, in the decisions of the courts, that their existence has been held not to constitute a taxable incident under PL 86-272. This court takes notice that such a replacement is made after the purchaser accepts the interstate delivery which resulted from solicitation. Whatever effect this may have in changing the protected samples to a local stock of goods need not be decided here, but without doubt it goes beyond "solicitation." The salesman's act

of replacing damaged goods exceeds the protection to interstate commerce provided by Public Law 86-272.

It follows that Washington, upon enacting the essential statute, would have the power and jurisdiction to tax plaintiff on its net income ascribable to Washington sales, even though all of plaintiff's Washington activities are deemed to be in furtherance of its interstate commerce.

It may be argued that the very restricted activity of Washington salesmen in replacing damaged merchandise from the salesman's samples should be overlooked as de minimis.[⑩]

It must be recognized that similar minor incidents of intrastate activity in Oregon can subject a foreign corporation to a tax upon all of its activity in this state under ORS chapter 317; also, some minor necessity of the business or some desired corporate procedure may result in the taxpayer's reluctant entrance into the state, with consequent liability for the payment of income taxes on an allocated basis to the State of Oregon under ORS chapter 318. (For example, see *Atlas Foundry v. Commission*, 2 OTR 200, 204 (1965), a "small" sales office; *Olympia Brewing Co., supra,* at 110; *Herff Jones Co., supra.*) The same rule is equally applicable in every state.

 The statutes are silent as to the quantitative ingredient or minimal financial aspect of a business act that is required in order to demand its recogni-

---

[⑩] The doctrine *"de minimis non curat lex"* is a rule applicable in equity as well as in law. Annot, 44 ALR 168, 171 (1926). However, it has been held that it does not apply when the construction of a statute or an ordinance is involved. It does not stand in the way of a constitutional right. *Rothschild v. Interborough Rapid Transit Co.,* 162 App Div 532, 536, 147 NY Supp 1040 (1914); *Grunzfelder v. Interborough Rapid Transit Co.,* 146 App Div 873, 149 NY Supp 437 (1911); *Montgomery Light & Traction Co. v. Avant,* 202 Ala 404, 80 So 497 (1918); *State v. Turner,* 274 Ala 153, 146 So2d 315 (1962).

tion. This quantum or degree should not be a significant consideration. Too many legal constructions are rendered difficult for this reason. We are construing a Uniform Act and Public Law 86-272 and, in both instances, sharp lines should be drawn by the court in order to obtain the greatest possible degree of certainty for taxpayers and tax administrators. Gray areas which spawn litigation should be avoided when possible. Mr. Justice Holmes, in *Galveston, Harrisburg & etc. Ry. Co. v. Texas*, 210 US 217, 225, 28 S Ct 638, 52 L Ed 1031, 1036 (1908), said: "It being once admitted, as of course it must be, that not every law that affects commerce among the states is a regulation of it in a constitutional sense, nice distinctions are to be expected. * * *" But in the present instance, since the salesmen's replacement of damaged goods, subsequent to acts in solicitation of business, is an overt act patently beyond the limitations of PL 86-272, and one which can have substantial ramifications, it should be recognized for what it is and not brushed aside. The court finds it to be the determinant in this suit. Miles Laboratories is engaged only in interstate commerce in Washington but its activities in that state exceed the protection to interstate commerce given by PL 86-272. Therefore, Washington has the jurisdictional power in relation to plaintiff described in the Uniform Act, § 3 (ORS 314.620(2)). This precludes Oregon from placing in its sales numerator the sales from plaintiff's Oregon warehouse to Washington purchasers.

The court dismisses as unproved the plaintiff's contention that it is exempt under ORS 314.620(1) in that the corporation pays "a franchise tax for the privilege of doing business" in Washington or, possibly, it pays "a corporate stock tax."

The "franchise tax" referred to is found in RCW 23A.40.060 et seq. and is described in the Wash-

ington Code as an annual "license fee" payable by both domestic and foreign corporations. RCW 23A.-40.140, relating to the annual license fees payable by foreign corporations, reads:

> "All foreign corporations doing *intrastate* business, or hereafter seeking to do *intrastate* business in this state shall pay for the privilege of doing such *intrastate* business in this state the same fees as are prescribed for domestic corporations for annual license fees. Such fees shall be computed upon the proportion of the capital stock represented or to be represented by its property and business in this state to be ascertained by comparing the entire volume of business with the volume of *intrastate* business in this state. * * * All fees shall be paid on or before the first day of July of each and every year." (Emphasis supplied.)

This statute can be described as a franchise tax for the privilege of doing business but, since it is restricted to intrastate business, and since it appears that plaintiff is engaged solely in interstate commerce in Washington, it is not applicable. Plaintiff pays thereunder as a volunteer.[①]

■ The court also finds that RCW 23A.40.140 is not "a corporate stock tax" under ORS 314.620(2) and the Uniform Act, § 3. The quoted words were added to the Uniform Division of Income for Tax Purposes Act in the final draft and no drafter's commentary has been found respecting it nor have there been any cases construing it. The description in the Washington statute of the tax as an "annual license fee" is accepted by this court because it is thus described

---

[①] Plaintiff has paid the Washington license tax for some years. It is not a self-serving "volunteer" in the category of the plaintiff in *Signal Thread Co. v. King*, 222 Tenn 241, 435 SW2d 468, 6 CCH STC ¶ 250-149 (1968), but that decision is instructive on the effect of voluntary tax payments to a foreign state by a corporation seeking the right to apportion.

by Washington courts construing the statute. It is a license fee *measured* by the proportion of the capital stock of the corporation represented (or to be represented) by its property and business in the State of Washington, to be ascertained by comparing the entire volume of business with the volume of intrastate business in Washington. The imposition of the tax is not upon the corporate shares. The impact, of course, is upon the income of the corporation.

As has been mentioned, plaintiff, complying with the Washington act, has never been expected to pay more than the minimum license and franchise tax ($30) and the filing fee of $1. However, on the basis of the facts submitted to this court, it is concluded that Washington could not enforce collection even of the minimum. The cases hold that this annual license fee can be imposed upon foreign corporations only if they actually transact local business in the State of Washington. *State ex rel Barber Co. v. Hinkle*, 138 Wash 72, 244 P 398 (1926); *Smith & Co. v. Dickinson*, 81 Wash 465, 142 P 1133 (1914). The tax cannot be imposed upon a business engaged only in interstate commerce. *Nippert v. Richmond*, 327 US 416, 66 S Ct 586, 90 L Ed 760, 162 ALR 844 (1946); *Cudahy Packing Co. v. Hinkle*, 278 US 460, 49 S Ct 204, 73 L Ed 454 (1929); *Spokane Internat. R. Co. v. State*, 162 Wash 395, 299 P 362 (1931).

By virtue of its payment of the tax under RCW 23A.40.140, the plaintiff argues that it comes within the jurisdiction of the State of Washington because it has qualified to do business in that state. However, the court concludes that, under the Uniform Division of Income for Tax Purposes Act, Oregon's power to tax the income from property shipped from an Oregon warehouse to Washington purchasers cannot be foreclosed by the voluntary submission of the plaintiff corporation to the State of Washington.

There must also exist some jurisdictional factor includible in the term "nexus," which would support Washington's claim to impose a franchise tax (in derogation of Oregon's claims under the Uniform Act) without the consent of the plaintiff.

The court also dismisses the plaintiff's contention that Oregon's application of the sales factor and its alleged endeavor to obtain "extraterritorial values" are *ipso facto* in violation of the Fourteenth Amendment (Due Process) and of the Commerce Clause of the U.S. Constitution.

In justification of its contention, plaintiff relies on a number of pioneer cases relating to apportionment, including a quotation from *Gwin, etc., Inc. v. Henneford,* 305 US 434, 59 S Ct 325, 83 L Ed 272 (1939), respecting multiple burdens on interstate commerce, summed up in the statement of Beaman, *Paying Taxes to Other States* 3.20 (1963) (quoted in *Cal-Roof Wholesale v. Tax Com.,* 242 Or 435, 443, 410 P2d 233 (1966)):

> "Certain things are fairly clear. One is that a formula should be held invalid on its face if its adoption in all states would result in double or multiple taxation [of a foreign corporation]. * * *"

The vice of the tax statute in the *Gwin* case, of course, was its attempt to impose a tax upon the gross receipts of a Washington corporation, engaged in interstate commerce, without any provisions for apportionment and allocation of the gross receipts between states. The drafters of the Uniform Act were highly conscious of the history of conflicting state claims in the area of allocation and apportionment. *See* Lynn, *The Uniform Division of Income for Tax Purposes Act,* 19 Ohio St LJ 41, 42-53 (1958).[20] *See also* Streck-

___

[20] Lynn, *The Uniform Division of Income for Tax Purposes Act,* 19 Ohio St LJ 41 (1958), at 50-51, comments interestingly

er, *"Local Incidents"* *of Interstate Business,* 18 Ohio St LJ 69 (1957), at 75:

"* * * What we need [in the Uniform Act] is an approach which balances intelligently and realistically the competing claims of state and nation. If followed logically, the multiple burden theory would have led to the following general principle: A state *may* tax 'interstate commerce.' What the Constitution forbids is a multiplication of tax burden on an interstate activity resulting merely from

---

on the most difficult of the factors, sales, apropos of the Uniform Act's §§ 16 and 17 (ORS 314.665). The complexity of the sales factor, without a uniform act, is described at 50:

"Before tentative appraisal of this sales factor definition, conflict in existing sales factor definitions should be noted. The four most general bases for assigning sales to the sales factor numerator of an apportionment formula are: (1) sales office location; (2) customer location or point of delivery; (3) location of goods sold at time shipped or appropriated to order; and (4) place where goods are manufactured or mined. Some jurisdictions, of course, combine, modify or limit these definitional bases. As indicated above, Section 16(a) of the Uniform Act assigns sales to the sales factor numerator of the state of delivery unless: (1) the buyer is the United States government *or* (2) the taxpayer is not taxable in the purchaser's state. In either of which events, such sales are assigned to the state from which the goods were shipped.

"The usual objection to formula assignment of sales to the state of destination is that this may result in apportioning sales to a state in which the seller is not doing business. Otherwise this approach has much in its favor; its conceptual simplicity is a distinct advantage; moreover, basic data are ordinarily available. The statement in Section 16(b) should be read in conjunction with Section 3 of the Act. Considering these two sections together, it appears that taxpayer is 'taxable' in the state of delivery if that state has jurisdiction to tax vendor's net income whether it does so or not, or if it does in fact levy a net income tax, a corporate franchise tax whether measured by net income or not, or a corporate stock tax, any of which are applicable to vendor. It would seem that 'taxpayer is not taxable' in the state of the purchaser unless taxpayer is not doing business there. * * *"

*See also* Beaman, *Paying Taxes to Other States* 3.10 (1963).

the fact that the transaction touches more than one state. * * *"

The problem of cumulative burdens on interstate commerce must always be recognized. *Western Live Stock v. Bureau*, 303 US 250, 255-256, 58 S Ct 546, 82 L Ed 823, 827-828, 115 ALR 944 (1938). The drafters of the Uniform Act clearly were seeking to avoid duplication of taxes by different states on the same income of foreign corporations. They were also seeking to avoid the criticism of the states (who were expected to adopt the Uniform Act) to the effect that interstate commerce was using the Commerce Clause to obtain competitive advantages over local business.[19] The principle followed in the Uniform Act is that no income shall be taxed in excess of a 100 percent base if the corporation is subject to similar taxing statutes in each state which has jurisdiction to tax it and, on the other hand, that the Uniform Act shall provide no havens for excessive tax protection of interstate commerce. Hence the provisions for definitions, for apportionment and allocation, and, exceptionally, for imposition of a tax by a state *where no double taxation results*, in the circumstances depicted in ORS 314.665(2)(b). While the Uniform Act has been criticized,[20] it has not been found to be unconstitutional.

Defendant's Order No. I-73-41 shall be set aside and held for naught as it relates to plaintiff's business activities in the State of Washington which have been subjected to Oregon income tax for the tax years 1966, 1967 and 1968, and billings of plaintiff by defendant for tax deficiencies and interest on account of the Washington transactions shall be abated.

Each party shall bear its own costs.

[19] Lynn, *supra* n 12, at 49; Pierce, *The Uniform Division of Income for State Purposes,* 35 Taxes 747, 748 (Oct 1957).

[20] *See* Beaman, *supra* n 12, at 7.18, regarding the Uniform Act's use of both destination of sales and location-of-goods test in the sales numerator.